## Exhibit 1

**ADOPTED AS AMENDED 6/6/17 BOARD MEETING**
**SEE ATTACHED AMENDED MOTION**

**Los Angeles Department of Water & Power**

RESOLUTION NO. 0.17260

☐ POWER SYSTEM ☐ WATER SYSTEM ☐ CHIEF SUSTAINABILITY

JUN 0 6 2017

BOARD LETTER APPROVAL ☐ LEGAL ☐ COO ☐ CFO ☐ CAO

RELEASE DATE _____ JUN 16 2017

**DONNA I. STEVENER**
Chief Administrative Officer

**DAVID H. WRIGHT**
General Manager

**DATE:**       June 1, 2017

**SUBJECT:**    Agreement No. 47442-7 for Project Management and Consulting
                Services related to the Jones Settlement and Customer Care and
                Billing System Remediation With Aventador Utility Solutions, LLC.

## SUMMARY

The proposed contract will enable LADWP to retain the project management and
consulting services necessary for LADWP to (i) continue to implement the terms and
conditions specified in the Revised Settlement Agreement in the matter entitled
*Antwon Jones vs. City of Los Angeles* (Case No. BC577267) (the "Jones Action");
(ii) perform the work items related to the remediation of the defectively implemented
Customer Care and Billing (CC&B) System; and (iii) simultaneously add system
functionality required for increased system utilization for an amount not to exceed
$30,000,000 and term of three years. The contractor is uniquely situated to perform this
work, and therefore, a single source contract with Aventador Utility Solutions, LLC
(Aventador) is recommended.

It is anticipated that compliance with the terms and conditions of the Revised Settlement
Agreement in the Jones Action will result in the dismissal and release of all claims
asserted in the Jones Action and the related actions. Furthermore, this agreement will
help LADWP move towards monthly billing, smart grid alternatives, and additional
functionality related to CC&B that is required to implement better business practices and
to operate a more efficient, sustainable grid.

This item was not included in the Fiscal Year 2017-18 budget.

City Council approval is not required.

## RECOMMENDATION

It is recommended that the Board of Water and Power Commissioners (Board) adopt
the attached Resolution and recommend approval of Agreement No. 47442-7 with
Aventador.

## **ALTERNATIVES CONSIDERED**

The Revised Settlement Agreement requires oversight of remediation measures on an ongoing basis over the next three years while LADWP remains under oversight by an independent Court Appointed Monitor. LADWP has developed an extensive list of work items required by the Revised Settlement Agreement in the Jones Action, as well as work items related to the remediation of the defectively implemented CC&B system. In order to complete all of these required items, work must be performed concurrently. Many of these work items relate to the metrics included in the Revised Settlement Agreement, and includes metrics from the recently adopted "Customer Bill of Rights." Also, in order to utilize the system to perform specific business and strategic needs of LADWP, other programming can be performed simultaneously to meet customer, legislative and regulatory needs.

Contracting with other vendors to do this work was considered but not determined feasible because the amount of time to undertake the formal Request for Proposal process and for a new vendor to learn the details of the Settlement Agreement, LADWP's unique CC&B System, and various related personnel functions across the Department would not allow for the work to be performed in the Court mandated timeframe. The work contemplated under this Agreement requires specific knowledge and professional experience in litigation and project management relating to the implementation of a multi-phase and highly complex legal settlement. The work also requires specific knowledge of Oracle CC&B as configured uniquely for LADWP in order to effectively oversee and manage compliance with both the Revised Settlement Agreement and mandates issued by the independent Court Appointed Monitor.  The Lead Project Manager of this project has been working with LADWP for over two years on efforts related to the class action litigation, remediation and CC&B System.

In particular, the Revised Settlement Agreement requires oversight of remediation measures on an ongoing basis over the next three years while LADWP remains subject to oversight by an independent Court Appointed Monitor. LADWP has developed an extensive list of work items: (i) required by the Revised Settlement Agreement in the Jones Action; (ii) related to the remediation of the defectively implemented CC&B System; and (iii) necessary to add system functionality required for increased system utilization that will help LADWP move towards monthly billing, smart grid alternatives, and additional functionality related to CC&B that is required to implement better business practices and to operate a more efficient, sustainable grid. In order to complete all of these required items, work must be performed concurrently. Many of these work items relate to the metrics included in the Revised Settlement Agreement, and include metrics from the recently adopted "Customer Bill of Rights." Also, in order to utilize the system to perform specific business and strategic needs of LADWP, other programming can be performed simultaneously to meet customer, legislative and regulatory needs.

The required work is of a temporary, expert and special nature, and time is of the essence because of numerous Court ordered deadlines. It is neither cost effective nor

feasible to hire and/or train staff or to issue a Request for Proposal to seek other vendors to perform this work. The contractor is uniquely situated to perform this work, and therefore, a single source contract with Aventador is recommended.

## FINANCIAL INFORMATION

The proposed Agreement is for a term of three years, as necessary to provide the project management and consulting services required to ensure that the extensive list of work items required by the Revised Settlement Agreement in the Jones Action, as well as work items related to the remediation of the defectively implemented CC&B System are timely performed. The total contract amount is not to exceed $30,000,000.

Presently, there is no Board approved funding for this Agreement in FY2017-18. However, these costs will be included within the regulatory asset as established for billing system remediation and stabilization.

The Chief Administrative Officer will include funding by re-estimating for the cumulative $30,000,000 which will be distributed $10,000,000 for each year in fiscal years 2017-18, 2018-19, and 2019-20.

## BACKGROUND

On April 1, 2015, a class action lawsuit was filed by Antwon Jones against the City of Los Angeles (City) alleging claims of customer overbilling and other errors associated with the defective implementation of LADWP's new CC&B System. Plaintiff Jones directed his counsel to develop a settlement proposal that would resolve the claims asserted in his and three other class actions filed against the City and LADWP. The parties entered into mediation that resulted in a Revised Settlement Agreement.

Because the specific knowledge and professional experience in litigation and project management necessary to implement the complex settlement reached in the Jones Action is generally outside the scope of current LADWP job classifications, the Board approved the retention of a project manager who possessed the knowledge, skills and experience required to implement the terms of the Jones Settlement in the fall of 2015.

In March 2017, the General Manager instructed LADWP Information Technical Services (ITS) personnel to inform the General Manager of the tasks that remain to be completed in order to implement the terms of the Settlement in the Jones Action. Soon after having been so instructed, ITS personnel provided the General Manager with the requested information. This list also included several items not required in the settlement, but necessary to improve LADWP business practices such as monthly billing, preparation for smart grid alternatives, and more detailed monitoring of grid loading and capacity to better utilize local sustainable resources in specific areas where it can provide the greatest reliability.

On May 5, 2017, the independent Court Appointed Monitor identified to the Court anticipated future work items that the monitor believes are required to be performed by LADWP to comply with the terms of the Jones Settlement. The monitor also informed the Court of certain risks that could impact upon the LADWP's ability to timely complete these work items. Significantly, the Monitor informed the Court of the Monitor's belief that "LADWP lacks well-qualified IT project management personnel and the Department therefore lacks the capability required to successfully manage very large scale IT implementation projects." The Monitor further informed the Court that, "because the Department lacks these internal resources, it must procure such services on a contracted basis and, in the past, has often failed to do so."

The proposed Agreement with Aventador will provide LADWP with the necessary project management skills and expertise required by LADWP to timely complete the work items required to comply with the terms of the Jones Settlement. This proposed contract is also intended to ameliorate any concerns the Monitor may have concerning "LADWP's (i) lack of well-qualified IT project management personnel and (ii) prior failures to procure such services on a contracted basis.

To ensure that LADWP properly and timely satisfies the terms and conditions of the Revised Settlement Agreement, Aventador will provide as-needed oversight, project management, quality assurance, and implementation services for the following:

1. Oversee CC&B System and software contracts to remediate the current billing system, and recommend required system improvements to comply with the Court Settlement and Court Appointed Monitor mandates.
2. Provide planning, project management, quality assurance, and implementation services for projects related to CCB Remediation efforts as required by the Settlement, as part of the CC&B post implementation stabilization, or as directed by the Court Appointed Monitor or LADWP General Manager, including but not limited to, the following general projects:
   a. Class Action Settlement Programming Projects
   b. Developing, implementing and monitoring Operating and Billing Performance Metrics from Settlement and Customer Bill of Rights
   c. Migration of Major accounts from MV PBS to CC&B for billing calculations
   d. Completion of unbilled accounts review and remediation project
   e. Programming for quarterly/annual Rate Factor adjustments and changes in billing/rates for LADWP and the City's Department of Public Works, Bureau of Sanitation
   f. Programming to implement Water Bond Securitization Program
   g. Implementation of monthly billing for residential customers
   h. Testing and confirmation of ability to use IT Disaster Recovery Site for CCB processes
   i. Integration of Meter Data Management (MDM) system to CC&B for Smart Meter Pilot program accounts
   j. Review of cybersecurity impacts for CC&B

3. Development of internal guidelines and procedures to identify, escalate, and manage future, complex customer billing issues.
4. Coordination with court appointed independent CC&B System monitoring expert.

## ENVIRONMENTAL DETERMINATION

Determine item is exempt pursuant to California Environmental Quality Act (CEQA) Guidelines 15060 (c)(3). In accordance with this section, an activity is not subject to CEQA if it does not meet the definition of a project. Section 15378 (b)(5) states that organizational or administrative activities that will not result in direct or indirect physical changes in the environment do not meet that definition. Since the work under this contract would involve assisting. LADWP with customer information system remediation the proposed action is not subject to CEQA.

## CITY ATTORNEY

The Office of the City Attorney reviewed and approved the Agreement and Resolution as to form and legality.

## ATTACHMENTS

- Procurement Summary
- Resolution
- Agreement

## PROCUREMENT SUMMARY

| | |
|---|---|
| 1. | Recommended Vendor(s): Aventador Utility Solutions, LLC |
| 2. | Procurement Type: Single Source |
| 3. | Procurement Details:<br>  A. Contract Status: New<br>  B. Bid Advertisement Date: Not applicable<br>  C. Pre-Bid Conference Date: *Not applicable*<br>  D. Bid/Proposal Due Date: Not applicable<br>  E. Number of Downloads of Solicitation: Not applicable<br>  F. Number of Bids/Proposals Received: Not applicable<br>  G. Protest Received: Not applicable |
| 4. | Buyer Assigned: Tanesha M. Smith |
| 5. | Contract Administrator: Donna I. Stevener, Chief Administrative Officer |
| 6. | LADWP System/Division: Joint – Office of the Chief Administrative Officer |
| 7. | Contact Person for Item: Randyn Calvo/Beryl Taylor |

### A. Summary of Bids Received/Evaluation Rating Summary of Proposals

| Term | Aventador Utility Solutions, LLC |
|---|---|
| Original Period | |

### B. Evaluation of Bid/Proposal/Cooperative Agreement

Not applicable to this Agreement. This is a single source contract.

### C. Procurement History

| Service/Item History – Number of Times Item or Service has been Procured | | | | | |
|---|---|---|---|---|---|
| Contract/<br>PO No. | Contractor | Term of Contract | Start Date | Ending Date | Contract Amount |
| Not Applicable | | | | | |

| Vendor Experience – Number of Contracts Vendor had with LADWP During the Past 5 Years | | | | | |
|---|---|---|---|---|---|
| Contract/<br>PO No. | Contract Description | Term of Contract | Start Date | Ending Date | Contract Amount |
| Not Applicable | | | | | |

### D. Local Business Preference Program (LBPP)

Not applicable to this Agreement. This is a single source contract.

### E. Additional Outreach Efforts Taken

Not applicable to this Agreement. This is a single source contract.

**F. Small Business Enterprises (SBE)/Disabled Veterans Business Enterprises (DVBE)/Minority Business Enterprises (MBE)/Women Business Enterprises (WBE)/Other Business Enterprises (OBE) Subcontracting Participation**

Not applicable to this Agreement. This is a single source contract.

**ADOPTED AS AMENDED 6/6/17 BOARD MEETING**
**SEE ATTACHED AMENDED MOTION**

0.1 7 2 6 0

Resolution No._____

WHEREAS, the Los Angeles Department of Water and Power (LADWP) proposes to enter into Agreement No. 47442-7 (Agreement) with Aventador Utility Solutions, LLC (Aventador) to enable LADWP to retain the project management and consulting services necessary for LADWP to (i) continue to implement the terms and conditions specified in the Revised Settlement Agreement in the matter entitled Antwon Jones vs. City of Los Angeles (Case No. BC577267) (the "Jones Action"); (ii) perform the work items related to the remediation of the defectively implemented Customer Care and Billing (CC&B) System; and (iii) simultaneously add system functionality required for increased system utilization for a term of three years; and

WHEREAS, the required work is of a temporary, expert and special nature; and

WHEREAS, LADWP requires a single-source agreement with Aventador because the work contemplated under this Agreement requires specific knowledge and professional experience in litigation and project management relating to the implementation of a multi-phase and highly complex settlement and requires specific knowledge of Oracle Care and Billing System as configured uniquely for LADWP; and

WHEREAS, time is of the essence and it would not be practical nor advantageous for LADWP to solicit requests for proposals; and

WHEREAS, Aventador has reviewed the services to be provided and incorporated in this Agreement, and represent that they have the qualities, expertise, skills and abilities to perform such work.

NOW, THEREFORE, BE IT RESOLVED that LADWP proposes to enter into the Agreement with Aventador in an amount not to exceed $30,000,000.

BE IT FURTHER RESOLVED that pursuant to City Charter Section 1022, the Board of Water and Power Commissioners (Board) finds that it is more feasible to have the work performed by an independent contractor.

BE IT FURTHER RESOLVED that the Agreement, approved as to form and legality by the City Attorney, and filed with the Secretary of the Board, is hereby approved.

BE IT FURTHER RESOLVED that the President or Vice President, or the General Manager, or such person as the General Manager shall designate in writing, and the Secretary, Assistant Secretary, or the Acting Secretary of the Board are hereby authorized and directed to execute said contract for and on behalf of LADWP.

BE IT FURTHER RESOLVED that the Chief Accounting Employee of the LADWP, upon proper certification, is authorized and directed to draw demands on both the Water and Power Revenue Funds, in accordance with the terms of this Agreement and this Resolution.

I HEREBY CERTIFY that the foregoing is a full, true, and correct copy of the Resolution adopted by the Board of Water and Power Commissioners of the City of Los Angeles at its meeting held

JUN 0 6 2017

*Barbara E. Moschos*

_____

Secretary


APPROVED AS TO FORM AND LEGALITY
MICHAEL N. FEUER, CITY ATTORNEY

JUN 0 2 2017

BY_____
DIRK P. BROERSMA
DEPUTY CITY ATTORNEY

Item No. 22

# VERBAL MOTION

**I MOVE** that Item No. 22 on the June 6, 2017, Commission Agenda relative to a resolution authorizing Agreement No. 47442-7 for Project Management and Consulting Services related to the Jones Settlement and Customer Care and Billing System Remediation With Aventador Utility Solutions, LLC for a term of three years and an amount not to exceed $30,000,000, **BE AMENDED,** to add the following:

> "Create an ad hoc committee of two board members to provide oversight of this contract."

Moved by:      William Funderburk, Jr.

Seconded by:   Jill Banks Barad

Approved by the Board of Water and Power Commissioners at its Regular Meeting on June 6, 2017: Ayes: 5; Absent: None.

By: _Barbara E. Moschos_

Barbara E. Moschos, Board Secretary

APPROVED AS TO FORM AND LEGALITY
MICHAEL N. FEUER, CITY ATTORNEY

JUN 14 2017

BY _____
RICHARD TOM
ASSISTANT GENERAL COUNSEL

## DEPARTMENT OF WATER AND POWER
## CITY OF LOS ANGELES

### C O M M I S S I O N   O F F I C E

<u>June 22, 2017</u>
*(Council Release date 6/16/17)*

**BOARD FILE**

Attached herewith for      FILE _____

The following      CONFORMED COPY OF AGREEMENTS.

| FILE NO. | DATE | NAME | |
|---|---|---|---|
| 47442-7 | 06-06-17 | Authorizes Agreement No. 47442-7 for Project Management Consulting Services related to the Jones Settlement and Customer Care and Billing System Remediation With Aventador Utility Solutions, LLC, for a term of three years and an amount not to exceed $30,000,000.<br><br>Authorized by Resolution No. 017 260, adopted June 6, 2017.<br><br><br>Original           – Accounts Payable<br>Duplicate Originals  – Kept by Donna Stevener, CAO<br>Conformed Copies – Donna Stevener CAO, Made Their Own<br>                         – Board File | |

Railymin E. Thoschos

**BARBARA E. MOSCHOS**
Title            **Board Secretary**



PROFESSIONAL SERVICES AGREEMENT NO. 47442-7

Company Name: *Aventador Utility Solutions, LLC*

Subject: *Project Management and Consulting Services related to Customer Care and Billing System Remediation*

Revised: 6-02-17.rev1

## TABLE OF CONTENTS

**ARTICLE I – PARTIES AND NOTICE**
**1.1    Parties to the Agreement**
**1.2    Service of Notices**
**1.3    Execution of Task Orders and Contract Administration**

**ARTICLE II - TERM OF THE AGREEMENT**
**2.1    Term of the Agreement**
    2.1.1   RESERVED

**ARTICLE III – TIME**

**ARTICLE IV – COMPENSATION AND PAYMENT**
**4.1    Compensation**
    4.1.1   Not-to-Exceed Amount
    4.1.2   Authorized Expenditures
**4.2    Allowable Fees and Costs**
    4.2.1   Payment of Subconsultant Costs
    4.2.2   RESERVED
    4.2.3   Other Reimbursable Expenses
    4.2.4   RESERVED
**4.3    Method of Payment**
    4.3.1   Required Invoice Information
    4.3.2   Time and Material Task Order Invoices
    4.3.3   Fixed Price Task Order Invoices
    4.3.4   Notice of Items Not Approved for Payment
    4.3.5   Notification of Status of Task Order Expenditures
    4.3.6   Timely Invoicing
    4.3.7   Maximum Authorized Amount

**ARTICLE V – PROVISION OF SERVICES**
**5.1    Services to be Provided by the Consultant**
    5.1.1   Description of Consultant Services
    5.1.2   LADWP Approval of Work
    5.1.3   Industry Standard of Care
**5.2    Consultant Personnel**
    5.2.1   Key Consultant Personnel
    5.2.2   Unavailability of Key Personnel
    5.2.3   Removal of Consultant Personnel
**5.3    Consultant Use of Subconsultants**
    5.3.1   LADWP Pre-Approval of Subconsultants
    5.3.2   Subconsultant Subcontracting

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*
[*Rev. 03/20/2017*]

Page i

5.3.3    Agreement Provisions Applicable to Subconsultants
5.3.4    Copies of Consultant Subconsultant Contracts

**ARTICLE VI - TASK ORDER DEVELOPMENT AND APPROVAL**
**6.1    Task Order Request for Proposal (TORP)**
**6.2    Task Order Proposal**
**6.3    Evaluation of Task Order Proposal**
**6.4    Task Order Approval and Authorization**
**6.5    Task Order Modifications**

**ARTICLE VII - OWNERSHIP**
**7.1    Ownership Rights**
    7.1.1    Use of Deliverables
    7.1.2    Execution of Ownership Documents
**7.2    Warranty Against Infringement**
**7.3    Survival of Provisions**

**ARTICLE VIII - CONFIDENTIALITY AND RESTRICTIONS ON DISCLOSURE**
**8.1    Confidentiality**
**8.2    Reference Background Checks**

**ARTICLE IX - TERMINATION AND SUSPENSION**
**9.1    Termination for Convenience**
    9.1.1    Notice of Termination
    9.1.2    Receipt of Notice of Termination
    9.1.3    Amount Due
**9.2    Termination for Cause**
**9.3    Suspension of Work**
**9.4    Termination Transition**

**ARTICLE X - AMENDMENTS AND ADMINISTRATIVE CHANGES TO THE AGREEMENT**
**10.1    Amendments**
    10.1.1    Request for Amendment
    10.1.2    Development of Amendments
    10.1.3    Approval and Authorization of Amendments
**10.2    Administrative Changes**
    10.2.1    Request for Administrative Changes
    10.2.2    Development of Administrative Changes
    10.2.3    Approval and Authorization of Administrative Changes
**10.3    Order of Precedence**

**ARTICLE XI - DISPUTES**
**11.1    Disputes**
    11.1.1    Dispute Resolution

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page ii

11.1.2  Continued Work

11.1.3  Claim Procedures

**ARTICLE XII - ENTIRE AGREEMENT**

**12.1    Number of Pages and Attachments**

**12.2    Represented by Counsel**

**EXHIBITS**

**Exhibit A      General Conditions (Services)**

**Exhibit B      Special Provisions**

**Exhibit C      Fee Schedule**

**Exhibit D      RESERVED**

**Exhibit E      RESERVED**

**Exhibit F      List of Key Consultant Personnel**

**Exhibit G      Contract Insurance Requirements - LADWP**

**Exhibit H      Statement of Work**

**Exhibit I      RESERVED**

**Exhibit J      Confidentiality Agreement for LADWP Proprietary Information**

**AGREEMENT NUMBER 47442-7**
**BETWEEN**
**THE CITY OF LOS ANGELES DEPARTMENT OF WATER AND POWER**
**AND**
**AVENTADOR UTILITY SOLUTIONS, LLC**

**THIS AGREEMENT** is made and entered into by and between the City of Los Angeles acting by and through its Department of Water and Power, a municipal corporation, (hereinafter "LADWP") and Aventador Utility Solutions, LLC, a California limited liability corporation (hereinafter the "Consultant" or "Contractor"). Individually, LADWP and Consultant are referred to under this Agreement as a "Party" and collectively as the "Parties."

In consideration of the mutual covenants of the Parties as set forth below, the Parties hereby agree as follows:

**ARTICLE I: PARTIES AND NOTICE**

**1.1    Parties to the Agreement**

The Parties to this Agreement are:

Los Angeles Department of Water and Power (LADWP)
111 North Hope Street
Los Angeles, California 90012

**and**

Aventador Utility Solutions, LLC
801 Ocean Avenue, Suite 603
Santa Monica, CA 90403

**1.2    Service of Notices**

All notices, demands and communications regarding the interpretation of the terms of this Agreement or changes thereto shall be made in writing and may be effected by personal delivery or by certified mail, overnight carrier, or confirmed facsimile and shall be deemed communicated as of the date of delivery or the date of mailing, whichever is applicable, or in the case of a facsimile or email, upon receipt if transmitted during the receiving Party's normal business hours, otherwise on the first business day following receipt.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Project Management Services – Customer Information System Remediation
[*Rev. 03/20/2017*]

Page 1

If the name or address of the person(s) designated to receive notices, demands or communications, is changed, or additional persons are added to receive notices, demands or communications, written notice shall be given to the other Party, in accord with this article, of said change.

The authorized representatives to receive said notices shall be:

Authorized representatives of LADWP:

>Ms. Donna I. Stevener
>Chief Administrative Officer
>Los Angeles Department of Water and Power
>111 North Hope Street, Room 1504
>Los Angeles, California 90012
>Phone Number: (213) 367-1110
>Email Address: Donna.Stevener@ladwp.com

Authorized representatives of the Consultant:

>Ms. Gina M. Tufaro, Esq.
>Vice President and General Counsel
>801 Ocean Avenue, Suite 603
>Santa Monica, CA 90403
>Phone Number: (323) 986-3090
>Email Address: gtufaro@aventadorllc.com

## 1.3    Execution of Task Orders and Contract Administration

The LADWP authorized representatives identified in Article 1.2 above are authorized to execute Task Orders, and perform Contract Administration duties such as issue Change Order Notices, formally approve Deliverables, review invoices submitted for payment, etc.

## ARTICLE II: TERM OF THE AGREEMENT

## 2.1    Term of the Agreement

The term of this Agreement shall commence upon execution of this Agreement by all Parties hereto and shall terminate three (3) years thereafter, subject to the termination provisions herein. Performance shall not begin until the Consultant has obtained LADWP approval of insurance required herein.

### 2.1.1    RESERVED

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 2

**ARTICLE III: TIME**

LADWP and the Consultant understand and agree that "Time is of the Essence" in performance of this Agreement.

**ARTICLE IV: COMPENSATION AND PAYMENT**

**4.1    Compensation**

**4.1.1    Not-to-Exceed Amount**

The total compensation that may be paid to the Consultant by LADWP for complete and satisfactory performance of services under this Agreement shall not exceed thirty million dollars ($30,000,000).

**4.1.2    Authorized Expenditures**

Of the total amount of compensation included in Article 4.1.1 above, LADWP shall pay the Consultant for services performed, tasks implemented, and deliverables provided as specified in individual Task Orders executed in accordance with Article 4.2, Allowable Fees and Costs, and Article VI, Task Order Development and Approval, of this Agreement. LADWP shall not be liable for payment of monies unless there is a written Task Order approved by LADWP's authorized representative(s) identified in Article 1.2 of this Agreement. Therefore, there is no guarantee that the Consultant shall receive any amount of work during the term of this Agreement.

**4.2    Allowable Fees and Costs**

LADWP shall pay for services established in a Task Order executed in accordance with Article VI, Task Order Development and Approval, of this Agreement and based upon the Consultant and Subconsultant labor rates established in **Exhibit C, Fee Schedule**, which is attached hereto and made a part hereof. Such labor rates are inclusive of salary, employee benefits, overhead, profit, general office expenses, administrative services, invoice preparation and processing, routine telecommunications, internet, personal computer, facsimile, routine postage, individual shipping charges of less than ten dollars ($10.00), incidental copying, one hard copy of deliverables, and one electronic copy of deliverables costs.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 3

### 4.2.1 Payment of Subconsultant Costs

LADWP shall pay for Subconsultant expenses at the actual amount to be paid by the Consultant to the Subconsultant, consistent with the Subconsultant labor rates and fees established in **Exhibit C, Fee Schedule**, or the Subconsultant rates established in an authorized Task Order for services provided in accordance with this Agreement. In the event of a conflict between the Subconsultant rates established in **Exhibit C, Fee Schedule**, and an authorized Task Order, Subconsultant costs shall be paid at the lowest rate.

The Consultant may invoice for reasonable direct services in the management, oversight, and administration of Subconsultants, including the Consultant's reviewing and processing of Subconsultant invoices. No markup of any kind by the Consultant or Subconsultant for Subconsultant services of any tier shall be allowed.

### 4.2.2 RESERVED

### 4.2.3 Other Reimbursable Expenses

Other reimbursable expenses include purchase of special equipment, necessary field supplies and facilities, testing and laboratory services, individual shipping charges in excess of ten dollars ($10.00), materials, supplies used in the work performed for LADWP pursuant to an authorized Task Order. Reimbursable expenses shall be paid by LADWP at the actual cost of such expenses, the expense rates established in **Exhibit C, Fee Schedule**, or the expense rates established in an authorized Task Order, as applicable. In the event of a conflict between the expense rates established in **Exhibit C, Fee Schedule**, and an authorized Task Order, expenses shall be reimbursed at the lowest rate. No markup of any kind by the Consultant, Subconsultant of any tier, or supplier for other reimbursable expenses shall be allowed.

Any items purchased at the request of LADWP to accomplish the work shall become the property of LADWP upon purchase and shall be delivered to LADWP at the conclusion of the work. Any other items purchased by the Consultant for performance of services pursuant to an authorized Task Order shall be the property of the Consultant, shall not be charged to LADWP, and shall not be reimbursed by LADWP.

### 4.2.4 RESERVED

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 4

## 4.3 Method of Payment

Payment for Consultant services shall be made in accordance with authorized Task Orders. The Consultant shall submit invoices to LADWP in accordance with authorized Task Orders, with the billings against each individual Task Order tracked separately. Each invoice shall be accompanied by a statement detailing the services performed, tasks completed and the deliverables provided for which payment is requested, supporting documentation, and the LADWP Monthly Subconsultant Utilization Form, or its successor reporting format.

### 4.3.1 Required Invoice Information

A hard copy of the invoice shall be submitted to Attn: Accounts Payable Section, Department of Water and Power, City of Los Angeles, PO Box 51111, Room 424, Los Angeles, CA 90051-5700. An electronic copy of the invoice must be concurrently submitted and emailed to DWPAgreementInvoices@ladwp.com, and invoices shall be submitted to:

> Ms. Donna I. Stevener
> Los Angeles Department of Water and Power
> John Ferraro Building, Room 1504
> P.O. Box 5111
> Los Angeles, CA 90051-5700

The following information shall be included in each invoice submitted by the Consultant to LADWP:

1. Consultant name, address, and vendor code number as registered on LADWP vendor database
2. City of Los Angeles Business Tax Registration Number
3. Internal Revenue Service ID Number
4. Date of invoice
5. Invoice number
6. Contract number
7. Summary of individual Task Orders, including amount of current invoice, total invoiced to date, total authorized Task Order amount, Task Order percent complete, and percent of authorized Task Order cost invoiced to date, and the end date of the Task Order
8. Description of services and deliverables provided related to each individual Task Order and associated costs
9. Supporting documentation for all costs and expenses, in a format acceptable to LADWP

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 5

10. Following certification statement signed by the Consultant: "I hereby certify, under penalty of perjury, that the services rendered and billings reflected in this invoice are true, accurate and in conformance with the terms of this Agreement, including but not limited to the Living Wage Ordinance, Los Angeles Administrative Code Section 10.37 et. Seq."

11. Taxes

12. Total amount of invoice

13. Approval signature blocks for LADWP project manager and LADWP authorized representative(s) identified in Article 1.1, Parties to the Agreement and Service of Notices, of this Agreement

14. An accompanying LADWP Subcontractor Utilization Form, or its successor reporting format, identifying the amounts paid to each authorized Subconsultant for both the current invoice and total invoiced to date. The Consultant shall explain any deviations from the anticipated Subconsultant percentages identified in **Exhibit E, List of Subconsultants**, attached hereto and made a part hereof, and recommendations for recovering any shortfalls in Subconsultant utilization

The following specific language in the invoices/bills is acceptable: "Consultant certifies that all work performed for which this invoice/bill is submitted which required access to critical facilities as designated by LADWP was conducted by an individual(s) and for whom no disqualifying information (including felonies, offenses or moral turpitude, and other disqualifying criteria, if any, as specified in the Agreement between the Consultant and LADWP) has been found."

Consultant's failure to submit accurate and all required information shall result in LADWP's rejection of the invoice and non-payment.

### 4.3.2 Time and Material Task Order Invoices

For Task Orders specifying a time and materials method of payment, the Consultant shall invoice LADWP on a monthly basis for costs and expenses. The Consultant shall provide documents supporting costs and expenses, including original receipts or invoices for expenses in excess of twenty-five dollars ($25.00), summary of total hours worked by specified individual Consultant employees and the applicable hourly rate, and time sheets or payroll records as appropriate to support individual employee hours worked, with each monthly invoice. Payment shall be made within forty-five (45) calendar days of receipt of the Consultant's invoice

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 6

prepared in accordance with the requirements of Article 4.3.1 of this Agreement.

### 4.3.3   Fixed Price Task Order Invoices

For Task Orders specifying a fixed price method of payment, payment shall be made within forty-five (45) calendar days after review and approval of the deliverable by LADWP or receipt of the Consultant's invoice prepared in accordance with the requirements of Article 4.3.1, whichever is later.

### 4.3.4   Notice of Items Not Approved for Payment

LADWP's project manager will review the Consultant invoice within fifteen (15) working days and notify the Consultant in writing of any missing or required additional documents, questioned costs, inaccuracies, or concerns.

In the event that any deliverables, labor, or reimbursable expenses invoiced by the Consultant are not approved for payment, LADWP shall provide the Consultant with detailed comments addressing the shortfalls or costs of concern and shall meet with the Consultant to discuss such issues. Any disputes between LADWP and the Consultant regarding invoices costs and expenses shall be resolved in accordance with Article XI, Disputes, of this Agreement. LADWP shall pay undisputed invoice amounts.

### 4.3.5   Notification of Status of Task Order Expenditures

The Consultant shall notify LADWP in writing when costs reach fifty (50) and seventy-five (75) percent of the authorized Task Order amount. Such notice shall include an assessment of whether or not the tasks assigned in the Task Order can be completed within the authorized expenditure amount, and if not the Consultant shall propose suggested modifications to the Task Order for consideration by LADWP. Failure of the Consultant to provide such written notification may result in late payment of invoices by LADWP.

The notice shall state the estimated amount of additional funds required to continue performance for the period specified in the Schedule. At the time of the Notice, the Consultant shall notify the Authorized Representative in writing of the estimated amount of additional funds, if any, required to continue timely performance under the Task Order, and when the funds will be required.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 7

If, after notification, additional funds are not approved by the end of the Task Order period or another agreed-upon date, upon the Consultant's written request the LADWP Authorized Representative may in its sole discretion terminate the Task Order.

### 4.3.6 Timely Invoicing

All charges related to the performance of the Consultant's work or services for any Task Order, including Subconsultant and other reimbursable expenses, shall be invoiced by the Consultant to LADWP within six (6) months of the cost or expenses being incurred by the Consultant or Subconsultant. LADWP shall not reimburse the Consultant for any costs, expenses, work, or services invoiced to LADWP six (6) months after the date the costs were incurred by the Consultant or Subconsultant.

### 4.3.7 Maximum Authorized Amount

Notwithstanding any other provision of this Agreement, any changes or additions hereto that would increase LADWP's total obligation above the maximum authorized amount set forth in Article 4.1.1 of this Agreement shall be subject to prior approval by the Board of Water and Power Commissioners. LADWP shall not be obligated to pay for work performed by the Consultant for any such changes made in violation of this Agreement.

## ARTICLE V: PROVISION OF SERVICES

### 5.1 Services to be Provided by the Consultant

During the term of this Agreement, the Consultant shall provide the services, tasks, and deliverables identified in the **Statement of Work (Exhibit H)** included herein, authorized by LADWP in this Agreement, and as set forth and agreed to by the Parties in individual Task Orders.

### 5.1.1 Description of Consultant Services

Consultant shall provide the services described in **Exhibit H,** and as set forth and agreed to by the Parties in individual Task Orders. Notwithstanding any other provision of this Agreement, the Consultant shall perform such other work and deliver such other items as are necessary to ensure that the services and deliverables provided under this Agreement meet the requirements set forth in this Agreement, including all Exhibits and attachments.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 8

### 5.1.2   LADWP Approval of Work

All services, work, tasks, and deliverables are subject to LADWP approval, which approval shall not be unreasonably withheld. Failure to receive approval may result in withholding compensation for such services, work, tasks, and deliverables pursuant to Article IV, Compensation and Payment, of this Agreement.

LADWP reserves the right to contract separately with other consultants to review the Consultant's deliverables and other work products produced in accordance with the terms of this Agreement. If LADWP contracts separately with other consultants to assist LADWP in reviewing the Consultant's deliverables and other work products, the Consultant agrees to cooperate fully and coordinate with such other consultants.

The Consultant shall provide access and make available to LADWP the Consultant's internal documents, reports, and reviews directly related to the work being performed pursuant to this Agreement, such as Project Schedule related documents and performance and project management audits.

### 5.1.3   Industry Standard of Care

The Consultant shall perform the work described herein in accordance with industry standards of care and shall reflect competent professional knowledge and judgment.

## 5.2   Consultant Personnel

### 5.2.1.   Key Consultant Personnel

Key Consultant personnel to be assigned to this Agreement are identified in the **List of Key Consultant Personnel** set forth in **Exhibit F**. Key Consultant Personnel shall be available to perform under the terms and conditions of this Agreement immediately upon commencement of the term of this Agreement.

The Consultant shall not reassign any key personnel without LADWP's prior written consent. LADWP shall review and approve or disapprove any personnel who are designated as key personnel in **Exhibit F** for any reason at its sole discretion. LADWP shall act reasonably in exercising its discretion to approve or disapprove any key personnel.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 9

### 5.2.2   Unavailability of Key Personnel

In the event individual key personnel listed in **Exhibit F** are terminated either with or without cause, or if individual key personnel are otherwise unavailable to perform services for the Consultant, the Consultant shall provide to LADWP written notification detailing the circumstances of the unavailability. The written notification shall designate replacement personnel prior to the effective date of individual key personnel termination or unavailability date, to the maximum extent feasible, but no later than five (5) business days after the effective date of the individual key personnel termination or unavailability. The Consultant shall propose replacement personnel who have a level of experience and expertise equivalent to the unavailable individual key personnel for LADWP review and approval.

The Consultant recognizes and agrees that early notification of the unavailability of key Consultant personnel and proposed replacement personnel is essential to avoiding delays in completing the services, work, tasks, and deliverables established in this Agreement or authorized Task Orders since the award of this agreement was predicated upon the competency of the Key Personnel provided.

Notwithstanding the foregoing, LADWP at its sole discretion shall have the right to terminate this Agreement if Paul Paradis is no longer employed by the Consultant or is otherwise unavailable to perform services under this Agreement. In the event of such termination of this Agreement, the Parties shall follow the termination procedures set forth in Articles 9.1.2 and 9.1.3 of this Agreement.

### 5.2.3   Removal of Consultant Personnel

LADWP shall have the right, in its absolute discretion, to require the removal of Consultant's personnel at any level assigned to the performance of the Services or Work, if LADWP considers such removal necessary in the best interests of the Program and requests such removal in writing. Such personnel shall be promptly removed from the Project by the Consultant at no cost or expense to LADWP. Further, an employee who is removed from the Project for any reason shall not be re-employed on the Project.

## 5.3   Consultant Use of Subconsultants

Subconsultants, including but not limited to individuals, contract employees, sole proprietors, firms, and corporations, designated to perform work under this

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 10

Agreement  shall be named as Tasks/Task Orders are created.

Notwithstanding the fact that the Consultant is utilizing Subconsultants, the Consultant shall remain responsible for performing all aspects of this Agreement and for ensuring that all services, work, and tasks are performed in accordance with the terms and conditions of this Agreement and authorized Task Orders.

LADWP has no obligation to any Subconsultant and nothing herein is intended to create any privity between LADWP and the Consultant's Subconsultant.

### 5.3.1   LADWP Pre-Approval of Subconsultants

LADWP shall pre-approve, in writing, any reduction, addition or substitution to Subconsultants, in accordance with **Exhibit B, Special Provisions, Subconsultant Substitution, Reduction, or Addition,** under **SP-2**. This applies to individuals, contract employees, sole proprietors, firms, and corporations.

### 5.3.2   Subconsultant Subcontracting

Subconsultants may not subcontract or delegate assigned work unless Consultant obtains LADWP's prior written consent.

### 5.3.3   Agreement Provisions Applicable to Subconsultants

Consultant shall require any subcontract entered into pursuant to this Agreement to be subject to Articles 5.3.2 ,the provisions of Article VII, Ownership, and Article VIII, Confidentiality and Restrictions on Disclosure of this Agreement.

The Consultant is solely responsible for ensuring that all subcontracts comply with the provisions and the terms of this Agreement, as applicable.

### 5.3.4   Copies of Consultant Subconsultant Contracts

Upon request, the Consultant shall provide LADWP with copies of Consultant Subconsultant contracts associated with the performance of this Agreement.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 11

## ARTICLE VI: TASK ORDER DEVELOPMENT AND APPROVAL

### 6.1     Task Order Request for Proposal (TORP)

During the term of this Agreement, LADWP shall have the right to request submittal of a Task Order Proposal within the general scope of work contemplated by this Agreement and consistent with **Exhibit C, Fee Schedule**. Task Orders may be based either upon a fixed price or a time and materials basis. For each task requested, LADWP shall prepare and transmit a TORP to the Consultant which will include the following elements:

1.  Task order number
2.  Task name or title
3.  Purpose and Objective of the task assignment
4.  Prerequisites to Consultant's performance
5.  Scope of Work
6.  Premises (assumptions, conditions, restrictions, project location, etc.)
7.  References (from past projects for similar work)
8.  Key Consultant and Subconsultant personnel required for the task
9.  Anticipated SBE/DVBE/MBE/WBE Subconsultant participation
10. Method of compensation (fixed price or time-and-materials basis)
11. Estimated total expenditures, including not-to-exceed cost or mutually established fixed price costs, to be paid to the Consultant to perform the task assignment
12. Detailed cost estimate with work breakdown, personnel or labor category, labor hours, labor rates, and expenditures as basis for the amount in Item 11
13. Applicable Consultant and Subconsultant Labor Rates and Fees, if not included in **Exhibit C, Fee Schedule** of the Agreement
14. Schedule, including expected progress reports and expected completion date
15. LADWP's designated Task Order Authorized Representative(s) as identified in the TORP
16. Deliverables
17. The methodology for evaluation of the successful task order proposal

### 6.2     Task Order Proposal

Upon receipt of LADWP's written TORP, the Consultant, at its own expense, shall prepare and deliver to LADWP a written response within ten (10) calendar days or as otherwise requested by LADWP. The Consultant's written response shall be in the form of a Task Order Proposal.

The Consultant may suggest to LADWP that changes be made to the work and services contemplated in the TORP. As part of the Task Order Proposal, the Consultant shall provide LADWP with a detailed cost estimate proposal, including

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*                    Page 12

identification of all required personnel, rates, and hours of effort.

In the event that Consultant personnel, Subconsultants, or expenses not included in **Exhibit E, List of Subconsultants**, or **Exhibit C, Fee Schedule**, are required by the Consultant to complete the task, the Task Order Proposal shall specifically include such additions to the appropriate Agreement Exhibits for approval and authorization by LADWP.

The Consultant shall comply with Article 5.3.1 of this Agreement and provide a summary of overall Subconsultant utilization for the Task Order and the Agreement as whole, and explain any deviations from the anticipated Subconsultant participation identified in **Exhibit E, List of Subconsultants**, and recommendations for recovering any shortfalls in Subconsultant utilization.

**6.3    Evaluation of Task Order Proposal**

LADWP will review and evaluate the Task Order Proposal for completeness, clarity, Consultant's ability to perform the work and services, schedule, and proposed use of Subconsultants and Consultant personnel.

During the review of the Consultant's Task Order Proposal, LADWP and the Consultant shall cooperatively work to develop a Task Order. To that end, informal exchanges between the Consultant and LADWP Task Order administrator or project manager are encouraged to aid in the development of the Task Order.

Any particular Task Order may be performed either on a time-and-materials basis with a not-to-exceed amount established for each Task Order, or upon a lump-sum basis, or a combination thereof. The particular method of compensation for each Task Order shall be determined by the Parties during its development. LADWP and the Consultant shall select the method of compensation that is most compatible with the particular Task Order, provides the least cost to LADWP, and assures the Consultant adequate compensation consistent with this fee schedule in **Exhibit C.**

LADWP and the Consultant agree to make a good faith effort to reach a mutually agreed upon fixed price or time and materials Task Order for services based upon the Consultant labor rates established in **Exhibit C, Fee Schedule**. Failure to agree on the price of such Task Orders shall be treated as a dispute and subject to the provisions of Article XI, Disputes, of this Agreement.

Upon agreement over the final form of a Task Order, the Consultant shall transmit the Task Order, signed by the Consultant's Authorized Representative, to LADWP.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 13

#### 6.4    Task Order Approval and Authorization

Upon LADWP's acceptance of an executed Task Order, the LADWP's Authorized Representative(s) as identified in Article 1.2 of this Agreement, or their designee established in writing, shall provide written authorization to the Consultant to commence the work described in the Task Order. A Task Order authorization letter executed by LADWP's Authorized Representative shall be transmitted to the Consultant to document all Task Orders.

The Task Order authorization letter shall describe the full and complete agreement among the Parties regarding the work and services contemplated in the Task Order. LADWP shall not be liable for payment for Consultant services, work, task, deliverables, or costs that are performed outside an authorized Task Order.

#### 6.5    Task Order Modifications

LADWP or Consultant may seek modifications to an authorized Task Order to address needed services, work, tasks, subtasks, deliverables, schedules, or costs associated with the authorized Task Order or to address changed conditions. Such Task Order modifications shall be processed in accordance with the Task Order development procedures established in this Article VI, Task Order Development and Approval.

### ARTICLE VII:  OWNERSHIP

#### 7.1    Ownership Rights

It is understood and agreed that the deliverables are being developed by the Consultant for the sole and exclusive use of LADWP and that LADWP shall be deemed the sole and exclusive owner of all right, title, and interest therein, including all copyright and proprietary rights relating thereto. All work performed by the Consultant on deliverables and any supporting documentation therefor shall be considered as "Works-Made-for-Hire" (as such are defined under the U.S. Copyright Laws and international treaties) and, as such, shall be owned by and for the benefit of LADWP. LADWP owns any and all trademarks, patents, copyrights, and any other intellectual property rights for any and all deliverables generated as a result of this Agreement, regardless of the state of completion of said deliverables.
In the event it should be determined that any such deliverables or supporting documentation, or parts thereof, do not qualify as a "Works-Made-for-Hire," the Consultant shall and hereby does transfer and assign to LADWP for no additional consideration, all rights, title, and interest that it may possess in such deliverables and documentation including, but not limited to, all copyrights to

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 14

the work and all rights comprised therein, and all proprietary rights relating thereto. Upon request, the Consultant shall take such steps as are reasonably necessary to enable LADWP to record such assignment. Further, the Consultant shall contractually require all persons performing under this Agreement, including all Subconsultants, to assign to LADWP all rights, title, and interest, including copyrights to all such "Works-Made-for-Hire."

### 7.1.1   Use of Deliverables

LADWP has the right to use or not use the deliverables and to use, reproduce, re-use, alter, modify, edit, or change the deliverables as it sees fit and for any purpose. If LADWP determines that a deliverable, or any part thereof, requires correction prior to LADWP approval, LADWP has the absolute right to use the deliverable until such time as the Consultant can remedy the identified deficiency.

### 7.1.2   Execution of Ownership Documents

The Consultant shall sign, upon request, any documents needed to confirm that the deliverables or any portion thereof are "Works-Made-for-Hire" and to effectuate the assignment of its rights to LADWP.

## 7.2   Warranty Against Infringement

The Consultant warrants that the performance of the services by the Consultant or its Subconsultants of any tier, pursuant to this Agreement, shall not in any manner constitute an infringement or other violation of any trademark, copyright, patent and/or trade secret of any third party.

## 7.3   Survival of Provisions

The provisions of this Article VII, Ownership, shall survive termination and expiration of this Agreement.

## ARTICLE VIII: CONFIDENTIALITY AND RESTRICTIONS ON DISCLOSURE

## 8.1   Confidentiality

All documents, records, and information provided by LADWP to the Consultant, or accessed or reviewed by the Consultant, during performance of this Agreement shall remain the property of LADWP. All documents, records and information provided by LADWP to the Consultant, or accessed or reviewed by the Consultant during performance of this Agreement, are deemed confidential.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 15

The Consultant agrees not to provide these documents and records, nor disclose their content or any information contained in them, either orally or in writing, to any other person or entity. The Consultant agrees that all documents, records, or other information used or reviewed in connection with the Consultant's work for LADWP shall be used only for the purpose of carrying out LADWP business and cannot be used for any other purpose. The Consultant shall be responsible for protecting the confidentiality and maintaining the security of LADWP documents, records, and information in its possession. The provisions of this Article VIII, Confidentiality and Restrictions on Disclosure shall survive termination and expiration of this Agreement.

**8.2     Reference Background Checks**

To the extent permitted by applicable law, LADWP may conduct reference checks on the Consultant, its employees, agents, and Subconsultants who shall have, or may have, access to LADWP customer, employee, Power System, or Water System information and data during performance of this Agreement. The Consultant recognizes the highly sensitive nature of such information and data and agrees to cooperate with LADWP and provide, to the extent permitted by applicable law, whatever information LADWP requires in order to conduct reference checks. LADWP may request changes to Consultant personnel pursuant to Article 5.2.1 of this Agreement in response to reference check information, and the Consultant shall accommodate such request for personnel changes.

**ARTICLE IX: TERMINATION AND SUSPENSION**

**9.1     Termination for Convenience**

**9.1.1    Notice of Termination**

LADWP may terminate this Agreement, or any Task Order, for its convenience upon giving at least thirty (30) calendar days written notice to the Consultant prior to the effective date of such termination, which date shall be specified in such notice.

**9.1.2    Receipt of Notice of Termination**

After receipt of a notice of termination and except as otherwise directed by LADWP, the Consultant shall:

A.      Stop work under the Agreement or Task Order on the termination effective date and to the extent specified in the notice of termination.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 16

B.      Place no further orders with Subconsultants for any work except as may be necessary for completion of such portions of the services or work expressly excluded from the Notice of Termination.

C.      Communicate any Notice of Termination to the affected Subconsultants at any tier.

D.      Terminate all orders and contracts with Subconsultants that relate to the performance of the services or work.

E.      Settle outstanding liabilities and claims arising out of such termination of orders and contracts with Subconsultants, with the acceptance of LADWP if required (which acceptance will be for the final purposes of this Article).

F.      Deliver to LADWP, within ten (10) calendar days after termination, any and all data, reports, other documents, and deliverables, or portions thereof, if any, prepared pursuant to this Agreement, but not already delivered.

G.      Transfer title to LADWP (to the extent that title has not already been transferred) in the manner and at the times and to the extent directed by LADWP, the work in process, completed work, and other material produced as part of or required in respect to performance of this Agreement.

H.      Comply with any other requirements of LADWP as may be specified in the Notice of Termination.

### 9.1.3  Amount Due

The amount due the Consultant by reason of termination for LADWP's convenience shall be determined as follows:

A.      The Consultant shall be paid on the basis of work completed as set forth in authorized Task Orders after LADWP reviews and approves of the work.

B.      The Consultant shall also be compensated by LADWP on a percentage completed basis of the applicable Deliverables for work in process, when appropriate, in compliance with authorized Task Orders after LADWP review and approval of the work.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC          Page 17
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

## 9.2    Termination for Cause

LADWP may terminate this Agreement for cause by giving the Consultant a written notice of breach. The Consultant shall have ten (10) calendar days from the date of LADWP's notice of breach to cure, or diligently commence to cure such breach. LADWP's notice of breach shall include a time and location for the individuals identified in Article 1.2 of this Agreement to meet and discuss the notice of the breach. Such meeting shall be scheduled within ten (10) calendar days of the date of the notice of breach. If the Consultant is unable or unwilling to cure, or diligently commence to cure, such breach, or meet within the ten (10) day timeframe, LADWP may terminate this Agreement anytime thereafter upon providing the Consultant written notice.

If this Agreement is terminated for cause, the Consultant shall comply with Article 9.1.2, above. LADWP shall pay for LADWP accepted deliverables, less the amount of any damages incurred as a result of the Consultant's failure to perform its responsibilities under this Agreement.

## 9.3    Suspension of Work

Upon written notice, LADWP may direct the Consultant to suspend, and to subsequently resume performance of all or any of the work. In the event that LADWP suspends work, the authorized Task Order schedule and budget shall be adjusted as appropriate in accordance with the provisions of Article 6.5 of this Agreement.

## 9.4    Termination Transition

When a replacement Consultant has been identified, the Consultant shall provide reasonable cooperation in the transition of its responsibilities to the replacement Consultant selected by LADWP to perform the tasks described in the scope of work and formerly performed by the Consultant for this Agreement during the fifteen (15) calendar day period prior to termination of the Agreement. The Consultant for this Agreement shall accept no additional tasks with respect to the scope of work after the effective date of the termination.

## ARTICLE X: AMENDMENTS AND ADMINISTRATIVE CHANGES TO THE AGREEMENT

### 10.1    Amendments

#### 10.1.1 Request for Amendment

During the term of this Agreement, LADWP shall have the right to request an Amendment to change the terms of this Agreement, including changes

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 18

in the services to be performed by the Consultant, extension of the term, and any increase or decrease in the amount of compensation authorized in Article 4.1 of this Agreement. LADWP shall make a formal written request with respect to the Amendment.

### 10.1.2 Development of Amendments

Within ten (10) calendar days following the Consultant's receipt of LADWP's written request for an Amendment, the Consultant, at its own expense, shall prepare and deliver to LADWP a detailed written statement regarding the implementation and impact of the Amendment.

Upon LADWP's review of the Consultant's written response to the request for an Amendment, LADWP and Consultant shall cooperatively work to develop an Amendment to the Agreement. To that end, informal exchanges between the Consultant and LADWP are encouraged.

### 10.1.3 Approval and Authorization of Amendments

Once both Parties agree to the language of the Amendment, the Amendment shall be signed by the person(s) authorized to bind the Consultant thereto. LADWP shall deliver a copy of the fully executed Amendment to the Consultant. After complete and authorized signatures by both Parties, the Amendment shall be effective and binding on both Parties and shall take precedence over any conflicting provisions in the Agreement.

Amendments that result in an Agreement term of greater than three (3) years in the aggregate may require City Council approval pursuant to Section 373 of the Charter of the City of Los Angeles (hereinafter "City Charter").

## 10.2   Administrative Changes

### 10.2.1 Request for Administrative Changes

During the term of this Agreement, LADWP or the Consultant may request changes to the work within the Agreement that are administrative in nature, including but not limited to changes to the authorized representatives, key Consultant or Subconsultant personnel, reporting documentation, and/or the implementation of pre-approved cost of living adjustments in fee schedules. LADWP or the Consultant shall make a formal written request with respect to each administrative change it desires to make.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 19

### 10.2.2 Development of Administrative Changes

When a change is requested by either Party, the receiving Party will review the implementation and impact of the administrative change. Within ten (10) calendar days following the receipt of the written administrative change request, LADWP or the Consultant, at its own expense, shall prepare and deliver to the originating Party a detailed written statement regarding the implementation and impact of the administrative change.

Upon review of the written response to the administrative change request, LADWP and Consultant shall cooperatively work to develop an Administrative Change to the Agreement. To that end, informal exchanges between the Consultant and LADWP are encouraged.

### 10.2.3 Approval and Authorization of Administrative Changes

Upon approval of the Administrative Change to the Agreement prepared pursuant to Article 10.2.2, LADWP's authorized representatives as identified in Article 1.2, of this Agreement, or their designee established in writing, shall deliver to the Consultant an Administrative Change authorization to the Agreement (hereinafter " Notice of Administrative Change") for execution, consistent with Article 1.3 of this Agreement.

## 10.3   Order of Precedence

In the event of any conflict between the terms of this Agreement and the terms of any exhibit, the terms of the exhibit shall control. In the event of any conflict between the following documents, all of which are hereby incorporated by reference into this Agreement, the order of precedence shall be as follows:

- Latest Amendment
- Agreement
- Latest Administrative Change (as set forth in Section 10.2 above)
- Task Order Assignment
- Other reference documents
- Proposal dated May 31, 2017

Except as otherwise specified, in the event of any conflict between the Special Provisions and the General Conditions contained herein, the Special Provisions will control.

Each party shall notify the other immediately upon the determination of any

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 20

such conflict or inconsistency.

Should anything necessary for a clear understanding of the Work be omitted from the Agreement Documents, or should the requirements appear to be in conflict, the Consultant shall secure written instructions from LADWP before furnishing the Work affected thereby.

## ARTICLE XI: DISPUTES

### 11.1   Disputes

#### 11.1.1 Dispute Resolution

The Parties shall use their best efforts to resolve disputes under this Agreement. If a settlement cannot be reached, or in the event of default that could result in termination of this Agreement, LADWP and the Consultant shall schedule a meeting of the individuals identified in Article 1.1 in a good faith attempt to resolve the issues in dispute. Such a Dispute Resolution meeting shall be scheduled and held within ten (10) business days of written request by either Party. The meeting shall allow for a detailed presentation of each Party's views on the issues and potential solutions to the dispute or default. If possible, the meeting should result in an agreed upon course of action to resolve the dispute or default.

#### 11.1.2 Continued Work

The Consultant and LADWP shall continue to perform work under the Agreement during any dispute.

#### 11.1.3 Claim Procedures

The provisions of Sections 5.169 and 5.170 (Div. 5, Ch. 10, Art. 1) of the Los Angeles Administrative Code and Section 350 of the City Charter shall govern the procedure and rights of the Parties with regard to claims arising from this Agreement. Nothing herein shall be construed as a waiver of the claim requirements set forth in Government Code 900 *et. seq.*

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 21

## ARTICLE XII: ENTIRE AGREEMENT

### 12.1 Number of Pages and Attachments

This Agreement is executed in two (2) duplicate originals, each of which is deemed to be an original. This Agreement includes *twenty-three (23)* pages and *seven (7)* Exhibits, which constitute the complete understanding among the Parties.

### 12.2 Represented by Counsel

Each Party acknowledges that it was represented by counsel in the negotiation and execution of this Agreement.

[Signature page follows]

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 22

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives.

DEPARTMENT OF WATER AND POWER
OF THE CITY OF LOS ANGELES BY
BOARD OF WATER AND POWER COMMISSIONERS

AVENTADOR UTILITY SOLUTIONS, LLC
*(Must be signed by two executives or officers of firm)*

By: _____
DAVID H. WRIGHT
General Manager

By: _____
President

Date: 6-22-17

Date: JUNE 2, 2017

And: _____
BARBARA E. MOSCHOS
Secretary

By: _____
Vice President and
General Counsel

Date: June 2, 2017

APPROVED AS TO FORM AND LEGALITY
MICHAEL N. FEUER, CITY ATTORNEY

JUN 2 2017

BY _____
DIRK P. BROERSMA
DEPUTY CITY ATTORNEY

AUTHORIZED BY RES. 012260
JUN 0 6 2017

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 23

Vendor Code: 068360002
City Business Tax Registration Certificate Number: 0002982565-0001-8

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
*Project Management and Consulting Services – Customer Care and Billing System Remediation*

Page 24

**EXHIBIT A**
**General Conditions (Services)**

## TABLE OF CONTENTS

GC-1    Construction of Provisions and Titles Herein
GC-2    Applicable Law, Interpretation, Enforcement and Severability
GC-3    Time of Effectiveness
GC-4    Integrated Agreement
GC-5    Force Majeure
GC-6    Waiver
GC-7    Independent Consultant
GC-8    Prohibition Against Assignment or Delegation
GC-9    Licenses and Certifications
GC-10   Non-Discrimination/Equal Employment Practices/Affirmative Action Program
GC-11   Claims for Labor and Materials
GC-12   Los Angeles City Business Tax Registration Certificate Required
GC-13   Indemnification Provisions
GC-14   Insurance
GC-15   Child Support Policy
GC-16   Service Contract Worker Retention Ordinance and Living Wage Policy
GC-17   Americans with Disabilities Act
GC-18   Retention of Records, Audit, and Reports
GC-19   LADWP's Recycling Policy
GC-20   Taxpayer Identification Number (TIN)
GC-21   Beneficiaries
GC-22   Consultant's Successors and Assigns
GC-23   Attorney's Fees and Costs
GC-24   Equal Benefits Ordinance
GC-25   Contractor Responsibility Program
GC-26   Bidder Campaign Contribution and Fundraising Restrictions
GC-27   Municipal Lobbying Ordinance
GC-28   Iran Contracting Act of 2010
GC-29   Contractor Performance Evaluation
GC-30   Errors and Omissions
GC-31   Safety
GC-32   Non-Interference

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A1

## GC-1 Construction of Provisions and Titles Herein

All titles or subtitles appearing herein have been inserted for convenience and shall not be deemed to affect the meaning or construction of any of the terms or provisions hereof. The language of this Agreement shall be construed according to its fair meaning and not strictly against LADWP or the Consultant. The word "Consultant" herein and in any amendment hereto means the Party or Parties identified in this Agreement wherein this Exhibit is incorporated by reference; the singular shall include the plural; if there shall be more than one Consultant herein, unless expressly stated otherwise, their obligations and liabilities hereunder shall be joint and several; use of feminine, masculine, or neutral gender shall be deemed to include the genders not used.

## GC-2 Applicable Law, Interpretation, Enforcement and Severability

Each Party's performance hereunder shall comply with all applicable laws of the United States of America, the State of California, and the City of Los Angeles, including but not limited to laws regarding health and safety, labor employment, wage and hours, workers compensation, and licensing laws which affect employees. Consultant shall comply with new, amended, or revised laws, regulations, and/or procedures that apply to the performance of this Agreement. This Agreement was made and entered into in the City of Los Angeles and shall be governed by, interpreted and enforced in accordance with the laws of the State of California and the City of Los Angeles, without regard to conflicts of laws principles. All litigation arising out of, or relating to, this Agreement shall be brought in a State or Federal court in the County of Los Angeles in the State of California. The Parties irrevocably agree to submit to the exclusive jurisdiction of such courts in the State of California and waive any defense of *forum non conveniens*. If any part, term or provision of this Agreement shall be held invalid, void, illegal, unenforceable, or in conflict with any law of a federal, state or local government having jurisdiction over this Agreement, the validity of the remaining parts, terms or provisions shall not be affected or impaired thereby.

The provisions of this article shall survive the expiration or termination of this Agreement.

## GC-3 Time of Effectiveness

Unless otherwise provided, this Agreement shall take effect when all of the following events have occurred:

A. This Agreement has been signed on behalf of the Consultant by the person(s) authorized to bind the Consultant hereto.

B. This Agreement has been approved by the City Council or by the Board, inclusive of City Council review period, officer, or employee authorized to give such approval.

C. The Office of the City Attorney has indicated in writing its approval of this

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A2

Agreement as to form and legality.

D.    This Agreement has been signed on behalf of LADWP by the person designated by the Board, officer or employee authorized to enter into this Agreement.

## GC-4    Integrated Agreement

This Agreement sets forth all of the rights and duties of the Parties with respect to the subject matter hereof, and replaces any and all previous agreements and understandings, whether written or verbal, relating hereto. This Agreement may be amended only as provided for in Article X of this Agreement.

## GC-5    Force Majeure

If either Party is unable to perform its obligations because of strikes, lockouts, labor disputes, embargos, acts of God, governmental regulations, judicial orders, enemy or hostile governmental action beyond the reasonable control of the Consultant or its Authorized Subconsultants ("Force Majeure"), and such event continues, or is expected to continue, for more than thirty (30) days, either Party may suspend unperformed services upon notice to the other party in writing, and such party's performance shall be suspended for the period equal to the period of time of such cause for suspension of performance. Both parties shall use reasonable efforts to mitigate the effect of a force majeure event. This section does not excuse either party's obligation to pay for services provided.

## GC-6    Waiver

A waiver of a default of any part, term, or provision of this Agreement shall not be construed as a waiver of any succeeding default or as a waiver of the part, term or provision itself. A Party's performance after the other Party's default shall not be construed as a waiver of that default.

## GC-7    Independent Consultant

The Consultant is acting hereunder as an independent Consultant and not as an agent or employee of LADWP or the City of Los Angeles, and all of the terms and conditions of this Agreement shall be interpreted in light of that relationship. The Consultant, including Consultant's Subconsultants, suppliers, employees, and agents, shall not represent or otherwise hold out itself or any of its directors, officers, partners, employees, or agents to be an agent or employee of LADWP for any purpose whatsoever. The Consultant shall not be entitled to any LADWP or City of Los Angeles benefits, including but not limited to, vacation, sick leave, Workers' Compensation, or pension.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A3

**GC-8      Prohibition Against Assignment or Delegation**

The Consultant may not, unless it has first obtained the written permission of LADWP:

   A. Assign or otherwise alienate any of its rights hereunder, including the right to
      payment; or

   B. Delegate, subcontract, or otherwise transfer any of its duties hereunder.

Such permission may be withheld at LADWP's sole discretion for any reason or no reason at all
since the award of this Agreement was based upon the personal services to be provided by the
Consultant.

**GC-9      Licenses and Certifications**

The Consultant and its officers, agents, and employees shall obtain and maintain all licenses,
permits, certifications and other documents necessary for the Consultant's performance
hereunder and shall pay any fees required therefore. Such licenses, permits, certifications shall
be specific to the State of California or regional regulatory agencies, as applicable to
Consultant's services, work, task, and deliverables pursuant to this Agreement. Consultant
agrees to immediately notify LADWP of any suspension, termination, lapse, non-renewal, or
restriction of such licenses, permits, certifications, or other documents.

**GC-10     Non Discrimination/Equal Employment Practices/Affirmative Action**

   A. **Non Discrimination and Equal Employment Practices**

      The Agreement shall comply with the provisions of Los Angeles Administrative Code
      Section 10.8.2, Non-Discrimination Clause and Section 10.8.3, Equal Employment
      Practices. By affixing its signatures on the Agreement that is subject to the Equal
      Employment Practices Provisions, the Consultant shall agree to adhere to the
      provisions in the Equal Employment Practices Provisions for the duration of the
      Agreement.

      Furthermore, the Consultant shall include similar provisions in all subcontracts
      awarded for work to be performed under the Agreement with the Department and
      shall impose the same obligations. The contract with the Subconsultant that
      contains similar language shall be made available to the Department upon request.

   B. **Affirmative Action Program**

      The Agreement shall comply with the provisions of Los Angeles Administrative Code
      10.8.4, Affirmative Action Program. By affixing its signature on the Agreement that is
      subject to the Affirmative Action Program provisions, the Consultant shall agree to
      adhere to the provisions in the Affirmative Action Program for the duration of the

Agreement.

Furthermore, the Consultant shall include similar provisions in all subcontracts awarded for work to be performed under the Agreement with the Department and shall impose the same obligations. The contract with the Subconsultant that contains similar language shall be made available to the Department upon request.

## GC-11     Claims for Labor and Materials

The Consultant shall promptly pay, when due, all amounts payable for labor and materials furnished in the performance of this Agreement so as to prevent any lien or other claim under any provision of law from arising against LADWP or City of Los Angeles or any of their respective property (including reports, documents, and other tangible matter produced by the Consultant hereunder), against the Consultant's rights to payments hereunder, and shall pay all amounts due under the Unemployment Insurance Act with respect to such labor.

## GC-12     Los Angeles City Business Tax Registration Certificate Required

The Consultant represents that it has obtained and presently holds a Business Tax Registration Certificate(s) required by the City of Los Angeles Business Tax Ordinance (Article 1, Chapter II, Article 21.00 and following, of the Los Angeles Municipal Code). For the term covered by this Agreement, the Consultant shall maintain, or obtain as necessary, all such Certificates required under said ordinance and shall not allow any such Certificate to be revoked or suspended.

## GC-13     Indemnification Provisions

### General Indemnification

The Consultant undertakes and agrees to indemnify and hold harmless the City of Los Angeles, the Department of Water and Power, the Board of Water and Power Commissioners of the City of Los Angeles, and all of their officers and employees, and, at the option of LADWP, defend LADWP and any and all of its Board, officers, agents, representatives, employees, assigns and successors in interest from and against any and all suits and causes of action, claims, charges, damages, demands, judgments, civil fines and penalties, or losses of any kind or nature whatsoever, for death, bodily injury or personal injury to any person, including Consultant's employees and agents, or damage or destruction to any property of either party hereto, or third persons in any manner caused by the acts, errors, or omissions incident to the performance of this contract on the part of the Consultant, or the Consultant's officers, agents, employees, or sub-consultants of any tier, except for the sole negligence or willful misconduct of LADWP, its Board, officers, agents, or employees.

### Intellectual Property Indemnity

Consultant will indemnify, defend at its expense and hold harmless LADWP against any loss, cost, expense, liability, and damages paid by LADWP as a result of any judgment or settlement

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A5

as a consequence of any infringement claim, demand, proceeding, suit or action (hereinafter "Action") against LADWP, its officers, directors, agents, employees, or affiliates for any infringement or violation, actual or alleged, direct or contributory, intentional or otherwise, of any intellectual property rights, including patents, copyrights, trade secrets, trademarks, service marks, and other proprietary information or rights (collectively "Intellectual Property Rights" hereinafter), (1) on or in any design, medium, matter, plant, article, process, method, application, equipment, device, instrumentation, software, hardware, or firmware used by the Consultant in the construction of the work under this Agreement; or (2) as a result of LADWP's actual or intended use under the specifications contained herein by LADWP of any product furnished by Consultant (hereinafter "Consultant Product"). Consultant Product herein includes, without limitation, any hardware, software, firmware, equipment, device, instrumentation, design, medium, matter, plant, article, process, method, and application. Consultant, however, shall have no liability to LADWP herein with respect to any claim of infringement which is based upon the combination or utilization of the Consultant Product with machines or devices not reasonably anticipated hereunder; or based upon a modification by LADWP of the Consultant Product furnished hereunder.

In Consultant's defense of LADWP, negotiation, compromise, and settlement of any such infringement action, LADWP shall retain discretion in and control of the litigation, negotiation, compromise, settlement, and appeals therefrom, as required by the City Charter, particularly Article II, Sections 271, 272 and 273 thereof.

In addition, if any part of the Consultant Product (a) becomes the subject of an action, (b) is adjudicated as infringing any Intellectual Property right, or (c) has its use enjoined or license terminated, Consultant shall, with LADWP's consent, do one of the following immediately at its expense: i) procure for LADWP the right to continue using said infringing part of the product; ii) replace the product with a functionally equivalent, non-infringing product; or iii)  modify the product so it becomes non-infringing.

Exercise of any of the above-mentioned options shall not cause undue business interruption to LADWP or diminish the intended benefits and use of the Consultant Product by LADWP under the specifications herein. If Consultant proves, to LADWP's satisfaction, that none of the options (i), (ii), or (iii) are feasible, Consultant shall instead refund the full purchase price of the product.

Rights and remedies available to LADWP hereinabove shall survive the expiration or other termination of this Agreement. Further, the rights and remedies are cumulative of those provided for elsewhere in this Agreement and those allowed under the laws of the United States, the State of California, and the City of Los Angeles.

This Condition shall survive the expiration or other termination of this Agreement.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A6

### GC-14 Insurance

A. **General Statement**

Acceptable evidence of required insurance, from insurers acceptable to LADWP, is required to be submitted by the Consultant and must be maintained current by the Consultant throughout the term of this Agreement. Said evidence of insurance must be on file with the Risk Management Section in order to receive payment under any agreement for services rendered, and in order to commence work under this Agreement.

B. **Applicable Terms and Conditions**

(1) Additional Insured Status Required

Consultant shall procure at its own expense, and keep in effect at all times during the term of this Agreement, the types and amounts of insurance specified on the attached Contract Insurance Requirements page. The specified insurance shall by use of City's own endorsement form or by other endorsement(s) attached to such policies, include the City of Los Angeles, LADWP, the Board, and all of their respective officers, employees and agents, their successors and assigns, as additional insureds against the area of risk described herein as respects Consultant's acts, errors, or omissions in its performance of this Agreement, hereunder or other related functions as agreed upon by the parties and performed by or on behalf of Consultant. Such insurance shall not limit or qualify the liabilities and obligations of the Consultant assumed under this Agreement.

(2) Severability of Interests and Cross Liability Required

Each specified insurance policy, as applicable, shall contain a Severability of Interest and Cross Liability clause and shall apply separately to each insured against whom a claim is made or suit is brought and a Contractual Liability Endorsement.

(3) Primary and Non-Contributory Insurance Required

All such insurance shall be Primary and Noncontributing with any other insurance held by LADWP where liability arises out of, or results from, the acts, errors, or omissions of Consultant, its agents, employees, officers, assigns, or any person or entity acting for or on behalf of Consultant. Any insurance carried by LADWP which may be applicable shall be deemed to be excess insurance and the Consultant's insurance is primary for all purposes despite any conflicting provision in the Consultant's policies to

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A7

the contrary.

(4)     Proof of Insurance for Renewal or Extension Required

Within ten (10) days after the expiration date of any of the policies required on the attached Contract Requirement page, Consultant shall provide documentation showing that the insurance coverage has been renewed or extended to LADWP.

(5)     Submission of Acceptable Proof of Insurance and Notice of Cancellation

Consultant shall provide proof to the Risk Manager of all specified insurance and related requirements either by use of LADWP's own endorsement form(s), by other written evidence of insurance acceptable to the Risk Manager, but always in a form acceptable to the Risk Manager. The documents evidencing all specified coverage shall be filed with LADWP prior to Consultant beginning operations hereunder. Said proof shall contain at a minimum, the applicable policy number, the inclusive dates of policy coverage, the date the protection begins for LADWP, and the insurance carrier's name. It shall provide that such insurance shall not be subject to cancellation, material reduction in coverage or non-renewal except after written notice by certified mail, return receipt requested, to the Risk Management Section at least thirty (30) calendar days prior to the effective date thereof. The notification shall be sent by electronic means or registered mail to: The Risk Management Section, Financial Service Organization, Post Office Box 51111, JFB Room 465, Los Angeles, California 90051-0100.

(6)     Claims-Made Insurance Conditions

Should any portion of the required insurance be on a "Claims Made" policy, the Consultant shall, at the policy inception date following each renewal year, provide evidence that the "Claims Made" policy has been renewed with a retro-active or extended discovery period at a minimum to the policy in place as of the effective date of this agreement with the same limits, terms and conditions of the expiring policy.

(7)     Failure to Maintain and Provide as Cause for Termination

Failure to maintain and provide acceptable evidence of the required insurance for the required period of coverage shall constitute a breach of contract, upon which LADWP may immediately terminate or suspend this Agreement.

(8)     Specific Insurance Requirements

See **Exhibit G, Contract Insurance Requirements-LADWP**.

## GC-15    Child Support Policy

The Consultant and any Subconsultant(s) must fully comply with all applicable State and Federal employment reporting requirements for the Consultant's and any Subconsultant(s)' employees. The Consultant and any Subconsultant(s) must fully comply with all lawfully served Wage and Earnings Assignment Orders and Notices of Assignment in accordance with the California Family Code. The Consultant and any Subconsultant(s) must certify that the principal owner(s) thereof (any person who owns an interest of 10 percent or more) are in compliance with any Wage and Earnings Assignment Orders or Notices of Assignment applicable to them personally. The Consultant and any Subconsultant(s) must certify that such compliance will be maintained throughout the term of this Agreement.

Failure of the Consultant and/or any Subconsultant(s) to fully comply with all applicable reporting requirements or to implement lawfully served Wage and Earnings Assignments or Notices of Assignment or failure of the principal owner(s) to comply with any Wage and Earnings Assignments or Notices of Assignment applicable to them personally shall constitute a default under this Agreement. Failure of the Consultant and/or any Subconsultant(s) or principal owner(s) thereof to cure the default within ninety (90) calendar days of notice of such default by LADWP shall subject this Agreement to termination.

The Consultant will contractually require all Subconsultants performing services under this Agreement to comply with the provisions of this section.

## GC-16  Service Contract Worker Retention Ordinance and Living Wage Policy

Unless otherwise exempt in accordance with the provisions of this Ordinance, this contract is subject to the applicable provisions of the Service Contractor Worker Retention Ordinance (SCWRO), Section 10.36 et seq., and the Living Wage Ordinance (LWO), Section 10.37 et seq. of the Los Angeles Administrative Code. The ordinance require that unless a specific exemption applies as determined by the awarding authority and confirmed by the designated administrative agency, all employers (as defined) under contracts primarily for the furnishing of services to or for the City and that involve an expenditure or receipt in excess of twenty-five thousand dollars ($25,000) and a contract term of at least three (3) months; lessees; licensees; or certain recipients of City financial assistance, generally shall provide the following:

A.    Retention by a successor Consultant for a ninety (90) day transition period, the employees who have been employed for the preceding twelve (12) months or more by the terminated consultant or subconsultant, earning no more than twice the hourly wage without health benefits available under the LWO Section 10.37 et seq. of the Los Angeles Administrative Code;

B.    Payment of a minimum initial wage rate to employees as defined in the LWO, may be adjusted each July 1, and provisions of benefits as defined in the LWO.

C.   Consultant further pledges that the Consultant shall comply with federal law proscribing retaliation for union organizing and shall not retaliate for activities related to the LWO. Consultant shall require each of its Subconsultants within the meaning of the LWO to pledge to comply with the terms of federal law proscribing retaliation for union organizing. Consultant shall deliver the executed pledges from each such Subconsultant to the City within ninety (90) days of the execution of the Subconsultant. Consultant's delivery of executed pledges from each such Subconsultant shall fully discharge Consultant's obligation with respect to such pledges and fully discharge the obligation of the Consultant and Subconsultants to comply with the provision in the LWO contained in Section 10.37.6(c) concerning compliance with such federal law.

D.   The Consultant, whether an employer, as defined in the LWO, or any other person employing individuals, shall not discharge, reduce in compensation, or otherwise discriminate against any employee for complaining to the City with regard to the employer's compliance or anticipated compliance with the LWO, for opposing any practice proscribed by the LWO, for participating in proceedings related to the LWO, for seeking to enforce the employee's rights under the LWO by any lawful means, or otherwise asserting rights under the LWO by any lawful means, or otherwise asserting rights under the LWO. The Consultant shall post the LWO Notice to Employees and the Notice of Prohibition Against Retaliation, in a conspicuous place.

E.   Any Subcontract entered into by the Consultant relating to this Agreement, to the extent allowed hereunder, shall be subject to these provisions and shall incorporate the provisions of the LWO and the SCWRO.

F.   Consultant shall comply with all rules, regulations and policies promulgated by the designated administrative agency, which may be amended from time to time.

Under the provisions of Section 10.36.3(c) and Section 10.37.6(c) of the Los Angeles Administrative Code, the City shall have the authority, under appropriate circumstances, to terminate this contract and otherwise pursue legal remedies that may be available if the City determines that the subject Consultant has violated provisions of the LWO and the SCWRO or both.

Where under the LWO Section 10.37.6(e), the designated administrative agency has determined (a) that the Consultant is in violation of the LWO in having failed to pay some or all of the living wage, and (b) that such violation has gone uncured, the awarding authority in such circumstances may impound monies otherwise due the Consultant in accordance with the following procedures. Impoundment shall mean that from monies due the Consultant the awarding authority may deduct the amount determined to be due and owing by the Consultant to its employees. Such monies shall be placed in the holding account referred to in LWO Section

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A10

10.37.6(d)(3) and disposed of under procedures there described through final and binding arbitration. Whether the Consultant is to continue work following an impoundment shall remain in the unfettered discretion of the awarding authority. The Consultant may not elect to discontinue work either because there has been an impoundment or because of the ultimate disposition of the impoundment by the arbitrator.

**Earned Income Tax Credit**

This contract is subject to the provisions of Section 10.37.4(b) of the Los Angeles Administrative Code, requiring employers to inform employees of their possible right to the federal Earned Income Tax Credit (EITC). Employers must further make available to employees the forms required to secure advance EITC payments from employers.

### GC-17   Americans with Disabilities Act

The Consultant hereby certifies that it will comply with the Americans with Disabilities Act 42, U.S.C. Section 12101 et seq., and its implementing regulations. The Consultant will provide reasonable accommodations to allow qualified individuals with disabilities to have access to and to participate in its programs, services and activities in accordance with the provisions of the Americans with Disabilities Act. The Consultant will not discriminate against persons with disabilities or against persons due to their relationship or association with a person with a disability. Any subcontract entered into by the Consultant, relating to this Agreement, to the extent allowed hereunder, shall be subject to the provisions of this paragraph.

### GC-18   Retention of Records, Audit, and Reports

Consultant shall maintain, and shall cause Consultant's Subconsultants and suppliers to maintain records pertaining to the performance of services pursuant to this Agreement, in their original form, including but not limited to, reports, documents, deliverables, employee time sheets, accounting procedures and practices, records of financial transactions, and other evidence, regardless of form (e.g., machine readable media such as disk, tape, etc.) or type (e.g., databases, applications software, database management software, utilities, etc.), sufficient to properly reflect all fees claimed to have been incurred and services performed pursuant to this Agreement ("financial records").

All financial records shall be retained, and shall be subject to examination and audit by LADWP personnel or by LADWP's agents (herein after "Authorized Auditors"), for a period of not less than four (4) years following final payment made by LADWP hereunder or the expiration date of this Agreement, whichever is later.

Upon thirty days' (30) written notice to Consultant, LADWP shall have the right to audit the financial records of Consultant and its Subconsultants, upon reasonable written notice to Consultant, no more than one time per year, at LADWP's cost. The Authorized Auditors shall make good faith efforts not to unreasonably interfere with Consultant's normal business

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A11

operations. LADWP shall have the right to contract a third-party audit firm to conduct such an audit, provided that such third-party audit firm agrees to Consultant's standard nondisclosure terms and to utilize standard audit software and methodologies. Any information provided by Consultant and its Subconsultants on machine readable media (e.g. Access, Excel or ACL) shall be provided in a format accessible and readable by the Authorized Auditors. Consultant and Subconsultant shall not, however, be required to furnish the Authorized Auditors with commonly available software.

Examinations and audits will be performed using generally accepted auditing practices and principles and applicable City, State and Federal government audit standards. For Consultants that utilize or are subject to FAR, Part 30 and 31, et seq. accounting procedures, or a portion thereof, examinations and audits will utilize such information.

To the extent that the Authorized Auditor's examination or audit reveals inaccurate, incomplete or non-current records, or records are unavailable, the records shall be considered defective, and consistent with standard auditing procedures the Consultant will be provided thirty (30) calendar days to review the Authorized Auditor's examination results or audit and respond to LADWP prior to the examination's or audit's finalization.

If the Authorized Auditor's examination or audit indicates an error in billing resulting in either an underpayment or overpayment under a previous payment application, the identified discrepancy shall be reviewed. The Parties will discuss the best manner in which to correct the error within fifteen (15) calendar days of Authorized Auditor's notice to the Parties of the billing error. The Party in error will pay the other Party the amount of the discrepancy within fifteen (15) calendar days thereafter.

The Consultant shall contractually require all Subconsultants performing services under this Agreement to comply with the provisions of this section by inserting this provision GC-18 in each Subconsultant contract and by contractually requiring each Subconsultant to insert this provision GC-18 in any of its Subconsultant contracts related to services under this Agreement. In addition, Consultant and Subconsultants shall also include the following language in each Subconsultant contract:

> "LADWP is a third party beneficiary of the foregoing audit provision. The benefits of the audit provision shall inure solely for the benefit of LADWP. The designation of LADWP as a third party beneficiary of the audit provision shall not confer any rights or privileges on the Consultant, Subconsultant or any other person/entity."

If an examination or audit undertaken pursuant to the Retention of Records, Audit, and Reports provision of the General Conditions GC-18 for LADWP Professional Service Contracts reveals that LADWP overpayment to the Consultant is more than five (5) percent of the billings reviewed, the Consultant shall pay all expenses and costs incurred by the Authorized Auditors arising out of or related to the examination or audit. Such examination or audit expenses and costs shall be paid by the Consultant to LADWP within fifteen (15) calendar days of notice to the Consultant of the costs and expenses.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A12

The provisions of this section shall survive expiration or termination of this Agreement.

## GC-19  LADWP's Recycling Policy

The Consultant shall submit all written documents on paper with a minimum of thirty (30) percent post-consumer recycled content. Existing company/corporate letterhead/stationery that accompanies these documents is exempt from this requirement. Documents of two (2) or more pages in length shall be duplex-copied (double-sided pages). Neon or fluorescent paper shall not be used in any written documents submitted to LADWP.

## GC-20  Taxpayer Identification Number (TIN)

The Consultant represents that it has obtained and presently has a Tax Identification Number (TIN). For the term covered by this Agreement, the Consultant shall maintain, or obtain as necessary, a TIN. No payment will be made under this Agreement without a valid TIN number.

## GC-21  Beneficiaries

This Agreement is intended only for the benefit of the Parties hereto and does not, nor shall be interpreted, to create any rights in any nonsignatory to this Agreement.

## GC-22  Consultant's Successors and Assigns

All indemnifications and warranties provided by the Consultant pursuant to this Agreement will be assumed by and binding upon the Consultant's successors and assigns. The provisions of this paragraph shall survive expiration or termination of this Agreement.

## GC-23  Attorney's Fees and Costs

Both Parties hereto agree that in any action to enforce the terms of this Agreement, each Party shall be responsible for its own attorneys' fees and costs. The provisions of this paragraph shall survive expiration or termination of this Agreement.

## GC-24  Equal Benefits Ordinance

Unless otherwise exempted in accordance with the provisions of this Ordinance, this Contract is subject to the applicable provisions of the Equal Benefits Ordinance (EBO) Section 10.8.2.1 of the Los Angeles Administrative Code, as amended from time to time.

A.    During the performance of the Contract, the Contractor certifies and represents that the Contractor will comply with the EBO. The Contractor agrees to post the following statement in conspicuous places at its place of business available to employees and applicants for employment:

"During the performance of a Contract with the City of

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A13

Los Angeles, the CONTRACTOR will provide equal benefits to employees with spouses and its employees with domestic partners. Additional information about the City of Los Angeles' Equal Benefits Ordinance may be obtained from the Department of Public Works, Bureau of Contract Administration, Office of Contract Compliance at (213) 847-1922."

B. The failure of the Contractor to comply with the EBO may be deemed to be a material breach of the Contract by the Awarding Authority.

C. If the Contractor fails to comply with the EBO, the Awarding Authority may cancel, terminate or suspend the Contract, in whole or in part and all monies due or to become due under the Contract may be retained by the City. The City may also pursue any and all other remedies at law or in equity for any breach.

D. Failure to comply with the EBO may be used as evidence against the Contractor in actions taken pursuant to the provisions of Los Angeles Administrative Code Section 10.40 et seq., Contractor Responsibility Ordinance.

E. If the Bureau of Contract Administration determines that a Contractor has set up or used its Contracting entity for the purpose of evading the intent of the EBO, the Awarding Authority may terminate the Contract on behalf of the City. Violation of this provision may be used as evidence against the Contractor in actions taken pursuant to the provisions of Los Angeles Administrative Code Section 10.40 et seq., Contractor Responsibility Ordinance.

## GC-25    Contractor Responsibility Program

Unless otherwise exempt in accordance with the provisions of the Ordinance, this Contract is subject to the provisions of the Contractor Responsibility Ordinance, Section 10.40 et seq., of the Los Angeles Administrative Code, which requires Contractor to update its responses to the responsibility questionnaire within thirty (30) calendar days after any change to the responses previously provided if such change would affect Contractor's fitness and ability to continue performing the contract. In accordance with the provisions of this Ordinance, by signing this Contract, Contractor pledges, under penalty of perjury, to comply with all applicable federal, state and local laws in the performance of this contract, including but not limited to, laws regarding health and safety, labor and employment, wages and hours, and licensing laws which affect employees. Violations of the Contractor Responsibility Ordinance shall constitute a material breach of this Agreement and entitle LADWP to terminate this Agreement and otherwise pursue legal remedies that may be available.

The Contractor further agrees to:

A. Notify the awarding authority within thirty calendar days after receiving notification that any government agency has initiated an investigation which

may result in a finding that the Contractor is not in compliance with all applicable federal, state and local laws in performance of this contract;

B.     Notify the awarding authority within thirty (30) calendar days of all findings by a government agency or court of competent jurisdiction that the Contractor has violated the provisions of Section 10.40.3(a) of the Ordinance;

C.     Ensure that its Subcontractor(s), as defined in the Ordinance, submit a Pledge of Compliance to awarding authorities; and

D.     Ensure that its Subcontractor(s), as defined in the Ordinance, comply with the requirements of the Pledge of Compliance and the requirement to notify Awarding Authorities within thirty (30) calendar days after any government agency or court of competent jurisdiction has initiated an investigation or has found that the Subcontractor has violated Section 10.40.3(a) of the Ordinance in performance of the subcontract.

### GC-26     Bidder Campaign Contribution and Fundraising Restrictions

In accordance with the City of Los Angeles Charter Section 470(c)(12) and related ordinances, bidders may not make campaign contributions to and or engage in fundraising for certain elected City officials or candidates for elected City office from the time they submit a bid to LADWP until either the contract is awarded or, for successful bidders, twelve (12) months after the contract is executed. The bidder's principals and Subcontractors performing one hundred thousand dollars ($100,000) or more in work on the contract, as well as the principals of those Subcontractors, are also subject to the same limitations on campaign contributions and fundraising.

The Consultant shall comply with the City Ethics Commission's "CEC Form 55" (3 pages) affidavit. The affidavit requires bidders to identify their principals, their Subcontractors performing one hundred thousand dollars ($100,000) or more in work on the contract, and the principals of those Subcontractors. Consultants shall also notify their principals and Subcontractors in writing of the restrictions and include the notice in contracts with Subcontractors. Consultants who fail to comply with City law may be subject to penalties, termination of contract, and debarment. Additional information regarding these restrictions and requirements may be obtained from the City Ethics Commission at (213) 978-1960 or ethics.lacity.org.

### GC-27     Municipal Lobbying Ordinance

The City of Los Angeles Municipal Code Section 48.01 et seq. requires certain individuals and entities to register with the City Ethics Commission and requires public disclosure of certain lobbying activities, including money received and spent. Therefore all bidders for all construction contracts, public leases, or licenses of any value and duration and bidders for goods or service contracts with a value of more than twenty-five thousand dollars ($25,000) and a term of at least three (3) months, shall comply with the City Ethics Commission's "CEC Form 50" (1 page) affidavit.

A copy of the City of Los Angeles Municipal Lobbying Ordinance is available for download on the City Ethics Commission's website at http://ethics.lacity.org/PDF/laws/law_mlo.pdf. Additional information regarding the Municipal Lobbying Ordinance may be obtained from the City Ethics Commission at (213) 978-1960 or ethics.lacity.org.

### GC-28    Iran Contracting Act of 2010

In accordance with California Public Contract Code Sections 2200-2208, all Consultants entering into, or renewing contracts with LADWP for goods and services estimated at one million dollars ($1,000,000) or more shall complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

### GC-29    Contractor Performance Evaluation

LADWP will evaluate and record the Contractor's overall performance to determine whether the Contractor is fulfilling its obligations on the current contract and to assess the Contractor's suitability to perform work for LADWP in the future. Contractors are required to meet critical contract provisions including, but not limited to, timely shipment and delivery of goods, completeness of delivered goods, quality of delivered goods, accuracy of billing, and conformance to the terms and conditions of the contract. If such conditions are breached, consistent with the terms of the contract, the Director of Supply Chain Services may terminate the contract for poor performance and may also debar the Contractor from doing business with LADWP for a period up to five (5) years.

### GC-30    Errors and Omissions

Notwithstanding any other provisions of this Agreement, approval by LADWP of any task or deliverable, or any requested design changes by LADWP, or any part thereof, shall not relieve the Consultant of the responsibility to meet all of the requirements as set forth in this Agreement. The Consultant shall have no claim for additional costs due to correction of its errors or omissions in said previously approved deliverables or any other action that may be necessary to comply with this Agreement, including all Exhibits, and authorized Task Orders.

### GC-31    Safety

The Consultant shall arrange facility visits with LADWP who shall advise the Consultant of appropriate safety and security rules. The Consultant shall adhere to the restrictions and instructions of LADWP personnel when visiting any facility.

The Consultant shall do everything reasonable to protect the life, safety, and health of persons at the construction site. The Consultant shall furnish and use safety devices and safeguards and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render safe and healthful employment. The Consultant shall be responsible for ensuring that each of the Consultant's Subconsultants meets the standards of this Article.

## **GC-32   Non-Interference**

The Consultant's performance of the work under this Agreement shall not interfere unnecessarily with the operation of LADWP or any other City department.

### **END OF GENERAL CONDITIONS**

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit A – General Conditions

Page A17

**EXHIBIT B**
**Special Provisions**

# EXHIBIT B
## Special Provisions

### TABLE OF CONTENTS

SP-1    Warranty and Responsibility of Consultant

SP-2    Subcontractor Substitution, Reduction, or Addition

SP-3    Conflicts of Interest

SP-4    Confidentiality

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit B –Special Provisions

Page B1

## EXHIBIT B
## Special Provisions

**SP-1     Warranty and Responsibility of Consultant**

Consultant warrants that the work performed hereunder shall be completed in a manner consistent with professional standards practiced among those firms within the Consultants profession, doing the same or similar work under the same or similar circumstances.

**SP-2     Subcontractor Substitution, Reduction, or Addition:**

The Consultant shall notify LADWP Contract Administrator in writing of any proposal to add, reduce, or substitute a Subconsultant in place of a Subconsultant listed in the Consultant's Qualification/Proposal. Prior to such change, the Consultant shall secure the acceptance of LADWP. The Consultant shall submit the following information in a form similar to that contained in the Consultant's original Qualification/Proposal.

- A.     Name of Subconsultant

- B.     Location and Phone Number of Place of Business

- C.     Contract Person

- D.     Subconsultant's License(s) number and expiration date (if applicable)

- E.     Current Certification Status (if applicable)

- F.     The portion of the services that will be performed by each Subconsultant

- G.     Reason for the change

LADWP will promptly initiate a review of the information submitted on each Subconsultant and transmit written notification to the Consultant concerning its decision.

LADWP shall not be responsible for delays incurred by the Consultant because of a timely disapproval by LADWP of a Subconsultant proposed by the Consultant, or for the late submittal for acceptance of a Subconsultant to LADWP, or because of a Subconsultant's removal from the performance of the Work.

**Falsification of Subcontractor Agreement:** Falsification or misrepresentation as to company name, contract amount, or actual work to be done by the Subcontractor will result in sanctions as set forth in applicable local, state, and federal laws.

**Penalties:** A Consultant violating any provision(s) of this program shall, subject to prior notice of

# EXHIBIT B
## Special Provisions

the alleged violation(s), and an opportunity to be heard and to present evidence in its own
defense, be deemed in violation of the Contract, and LADWP may:

A.  Terminate the contract; **or**

B.  Assess the Consultant a penalty of not more than 10% of the amount of the
Subcontract(s) involved.

### SP-3  Conflicts of Interest

Consultant will not accept any other contract during the term of the Agreement from any other
party if such other contract could represent, or could lead to a conflict of interest between
LADWP, Consultant, or the other party.

Any subcontract entered into pursuant to the terms of this Agreement shall be subject to, and
shall incorporate, the provisions of this Article.

### SP-4  Confidentiality

All documents, records, and information provided by LADWP to the Consultant, or accessed or
reviewed by the Consultant, during performance of this Agreement shall remain the property of
LADWP. All documents, records and information provided by LADWP to the Consultant, or
accessed or reviewed by the Consultant during performance of this Agreement, are deemed
confidential. The Consultant agrees not to provide these documents and records, nor disclose
their content or any information contained in them, either orally or in writing, to any other
person or entity. The Consultant agrees that all documents, records, or other information used
or reviewed in connection with the Consultant's work for LADWP shall be used only for the
purpose of carrying out LADWP business and cannot be used for any other purpose. The
Consultant shall be responsible for protecting the confidentiality and maintaining the security
of LADWP documents, records, and information in its possession.

#### Document Access/Control

A.  The Consultant shall make the confidential information provided by LADWP to
the Consultant, or accessed or reviewed by the Consultant during performance
of this Agreement, available to its employees, agents and /or Subconsultants,
only on a need-to-know basis. Further, the Consultant shall provide written
instructions to all of its employees, agents and Subconsultants with access to the
confidential information about the penalties for its unauthorized use or
disclosure.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit B –Special Provisions

Page B3

# EXHIBIT B
## Special Provisions

B.    The Consultant shall store and process confidential information in an electronic format in such a way that unauthorized persons cannot retrieve the information by computer, remote terminal or other means.

C.    The Consultant shall not remove documents, records, or information used or reviewed in connection with the Consultant's work for LADWP from LADWP facilities without prior approval from LADWP. The Consultant shall not use, other than in direct performance of work required pursuant to the Agreement, or make notes of any home address or home telephone numbers contained in personnel or customer files, confidential information, documents, or records provided by LADWP that are reviewed during work on this Agreement.

D.    With prior written approval from LADWP, the Consultant may make copies of such documents, written materials, notes, documents, confidential information, or other information, as necessary to perform its duties under this Agreement.

E.    The Consultant shall document and immediately report to LADWP any unauthorized use or disclosure of confidential information as defined in Article 8.1.

F.    The Consultant shall require that all its employees, agents, and Subconsultants who shall, or may, review, be provided, or have access to LADWP data, information, personnel or customer files, confidential information, documents, or records during the performance of this Agreement, execute a confidentiality agreement that incorporates the provisions of this Article VII, Confidentiality and Restrictions on Disclosure prior to performing work under this Agreement.

G.    The provisions of this Article VIII, Confidentiality and Restrictions on Disclosure shall survive termination and expiration of this Agreement.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit B –Special Provisions

Page B4

# EXHIBIT C
## Fee Schedule

Effective June 1, 2017 – December 31, 2017

| Position | Hourly Rate |
| --- | --- |
| Project Director | $475.00 |
| Deputy Project Director | $425.00 |
| Principal Project Manager | $400.00 |
| Principal Cyber Risk Mitigation Engineer | $475.00 |
| Senior Cyber Risk Mitigation Engineer | $450.00 |
| Principal Consulting Engineer | $425.00 |
| Senior Consulting Engineer | $375.00 |
| Principal Software Engineer/Solution Architect | $425.00 |
| Senior Software Engineer/Solution Architect | $375.00 |
| Principal Rates Consultant | $375.00 |
| Senior Rates Consultant | $325.00 |
| Principal Billing Solution Consultant | $375.00 |
| Senior Billing Solution Consultant | $325.00 |
| Senior Project Associate | $250.00 |
| Project Associate | $225.00 |
| Assistant Project Associate | $200.00 |

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit C-Fee Schedule

Page C1

# EXHIBIT D
# RESERVED

Los Angeles Department of Water and Power – – Aventador Utility Solutions, LLC
Agreement No. 47442-7-7
Exhibit D – Allowable Travel Expenses

Page D1

# EXHIBIT E
# RESERVED

## EXHIBIT F
## List of Key Consultant Personnel

**The following people are designated as Consultant's Key Personnel:**

| Name | Project Position | Labor Category | Location | Special Expertise | No. of Years Employed by Consultant / Experience |
|------|------------------|----------------|----------|-------------------|--------------------------------------------------|
| Paul O. Paradis | Project Director | $475/hour | On site at LADWP | Knowledge and expertise in development and implementation of court administered settlements in regular industries such as a utility company. | 27 years of experience / 8 years with Consultant |
| | | | | | |
| | | | | | |

]

# EXHIBIT G
## Contract Insurance Requirements - LADWP

**CONTRACT INSURANCE REQUIREMENTS – DEPARTMENT OF WATER AND POWER**
**For Contractors, Service Providers, Vendors, and Tenants**

Agreement/Activity/Operation: ___Prof/Personal Services - Consultation Services for Customer Info System Remedia___

Reference/Agreement: _____REQ #123459 - CERTIFICATE ACCAPTABLE (w/proper endorsements)_____

Term of Agreement: _____

Contract Administrator and Phone: _____Donna Stevener (213) 367-1110_____

Buyer and Phone Number: _____TBD_____

Contract-required types and amounts of insurance as indicated below by checkmark are the minimum which must be maintained. All limits are Combined Single Limit (Bodily Injury/Property Damage) unless otherwise indicated. Firm 30 day Notice of Cancellation required by Receipted Delivery.

**PER OCCURRENCE LIMITS**

(✓) WORKERS' COMPENSATION(Stat. Limits)/Employer's Liability:                    ( $1,000,000.00 )
    (✓) Broad Form All States Endorsement      ( ) US L&H (Longshore and Harbor Workers)
    ( ) Jones Act (Maritime Employment)      ( ) Outer Continental Shelf
    (✓) Waiver of Subrogation      ( ) Black Lung (Coal Mine Health and Safety)
    ( ) Other: _____      ( ) Other: _____

(✓) AUTOMOBILE LIABILITY:                                        ( $1,000,000.00 )
    ( ) Owned Autos      ( ) Any Auto
    ( ) Hired Autos      ( ) Non-Owned Auto
    ( ) Contractual Liability      ( ) Additional Insured
    ( ) MCS-90 (US DOT)      ( ) Trucker's Form
    ( ) Waiver of Subrogation      ( ) Other: _____

(✓) GENERAL LIABILITY:  ( ) Limit Specific to Project  ( ) Per Project Aggregate  ( $1,000,000.00 )
    (✓) Broad Form Property Damage  (✓) Contractual Liability  (✓) Personal Injury
    (✓) Premises and Operations  (✓) Products/Completed Ops.  ( ) Independent Contractors
    ( ) Fire Legal Liability  ( ) Garagekeepers Legal Liab.  ( ) Child Abuse/Molestation
    ( ) Corporal Punishment  ( ) Collapse/Underground  ( ) Explosion Hazard
    ( ) Watercraft Liability  ( ) Pollution  (✓) Additional Insured Status
    ( ) Waiver of Subrogation  ( ) Airport Premises  ( )Hangarkeepers Legal Liab.
    ( ) Marine Contractors Liability  ( ) Other: _____  ( ) Other: _____

( ) PROFESSIONAL LIABILITY:                                        (                    )
    ( ) Contractual Liability  ( ) Waiver of Subrogation  ( ) 3 Year Discovery Tail
    ( ) Additional Insured  ( ) Vicarious Liability Endt.  ( ) Other: _____

( ) AIRCRAFT LIABILITY:                                        (                    )
    ( ) Passenger Per Seat Liability  ( ) Contractual Liability  ( ) Hull Waiver of Subrogation
    ( ) Pollution  ( ) Additional Insured  ( ) Other: _____

( ) PROPERTY DAMAGE:  ( ) Loss Payable Status (AOIMA)                    (                    )
    ( ) Replacement Value  ( ) Actual Cash Value  ( ) Agreed Amount
    ( ) All Risk Form  ( ) Named Perils Form  ( ) Earthquake: _____
    ( ) Builder's Risk:$_____  ( ) Boiler and Machinery  ( ) Flood: _____
    ( ) Transportation Floater:$_____  ( ) Contractors Equipment$_____  ( ) Loss of Rental Income: _____
    ( ) Scheduled Locations/Propt.  ( ) Other: _____  ( ) Other: _____

( ) WATERCRAFT:                                        (                    )
    ( ) Protection and Indemnity  ( ) Pollution  ( ) Additional Insured
    ( ) Waiver of Subrogation  ( ) Other: _____  ( ) Other: _____

( ) POLLUTION:                                        (                    )
    ( ) Incipient/Long Term  ( ) Sudden and Accidental  ( ) Additional Insured
    ( ) Waiver of Subrogation  ( ) Contractor's Pollution  ( ) Other: _____

( ) CRIME:  ( ) Joint Loss Payable Status  ( ) Additional Insured  (          )
    ( ) Fidelity Bond  ( ) Financial Institution Bond  ( ) Loss of Monies/Securities
    ( ) Employee Dishonesty  ( ) In Transit Coverage  ( ) Wire Transfer Fraud
    ( ) Computer Fraud  ( ) Commercial Crime  ( ) Forgery/Alteration of Docs.
    ( ) Other: _____  ( ) Other: _____

( ) ASBESTOS LIABILITY:  ( ) Additional Insured                    (                    )

*Insurance Req (06/01/17-LC)*

# EXHIBIT H
## Statement of Work

**1.0 Background** - Project Management and consulting services will be provided in support of the Revised Settlement Agreement in Antwon Jones v. City of Los Angeles, Case No. BCF77267 (the "Jones Action"), continued remediation of the defectively implemented Customer Care and Billing (CC&B) System and addition of system functionality for increased utilization of the CC&B System.

**2.0 Project Objectives** - Los Angeles Department of Water and Power (LADWP) shall utilize an independent contractor with specific knowledge in project management and implementation of multi-phase and highly complex projects and oversight and management of compliance with court administered settlement agreements related to municipal utility litigation.

**3.0 Scope of Work** - Contractor shall provide project management and consulting services required by LADWP to timely complete the work items required to comply with the terms of the Jones Settlement. This proposed contract is also intended to ameliorate any concerns the Monitor may have concerning "LADWP's (i) lack of well-qualified IT project management personnel and (ii) prior failures to procure such services on a contracted basis.

**4.0 Detailed Technical Requirements (Contractor Requirements) -**
To ensure that LADWP properly and timely satisfies the terms and conditions of the Revised Settlement Agreement, Aventador will provide as-needed oversight, project management, quality assurance, and implementation services for the following:

1. Oversee CC&B System and software contracts to remediate the current billing system, and recommend required system improvements to comply with the Court Settlement and Court Appointed Monitor mandates.
2. Provide planning, project management, quality assurance, and implementation services for projects related to CCB Remediation efforts as required by the Settlement, as part of the CC&B post implementation stabilization, or as directed by the Court Appointed Monitor or LADWP General Manager, including but not limited to, the following general projects:
    a. Class Action Settlement Programming Projects.
    b. Developing, implementing and monitoring Operating and Billing Performance Metrics from Settlement and Customer Bill of Rights.
    c. Migration of Major accounts from MV PBS to CC&B for billing calculations.
    d. Completion of unbilled accounts review and remediation project.
    e. Programming for quarterly/annual Rate Factor adjustments and changes in billing/rates for LADWP and the City's Department of Public Works, Bureau of Sanitation.
    f. Programming to implement Water Bond Securitization Program.
    g. Implementation of monthly billing for residential customers.
    h. Testing and confirmation of ability to use IT Disaster Recovery Site for CCB processes.
    i. Integration of Meter Data Management (MDM) system to CC&B for Smart Meter Pilot program accounts.
    j. Review of cybersecurity impacts for CC&B.
3. Development of internal guidelines and procedures to identify, escalate, and manage future, complex customer billing issues.
4. Coordination with court appointed independent CC&B System monitoring expert.

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit H Statement of Work

Page H1

# EXHIBIT I
# RESERVED

# EXHIBIT J
Confidentiality Agreement for LADWP Proprietary Information

Los Angeles Department of Water and Power – Aventador Utility Solutions, LLC
Agreement No. 47442-7
Exhibit J - Confidentiality Agreement for LADWP Proprietary Information

Page J1

## Confidentiality Agreement for LADWP Proprietary Information

A. Confidentiality

All documents, records, and information provided by LADWP to the Contractor, or accessed or reviewed by the Contractor, during performance of this Agreement shall remain the property of LADWP. All documents, records and information provided by LADWP to the Contractor, or accessed or reviewed by the Contractor during performance of this Agreement, are deemed confidential. The Contractor agrees not to provide these documents and records, nor disclose their content or any information contained in them, either orally or in writing, to any other person or entity. The Contractor agrees that all documents, records, or other information used or reviewed in connection with the Contractor's work for LADWP shall be used only for the purpose of carrying out LADWP business and cannot be used for any other purpose. The Contractor shall be responsible for protecting the confidentiality and maintaining the security of LADWP documents, records, and information in its possession.

B. Document Access/Control

1. The Contractor shall make the confidential information provided by LADWP to the Contractor, or accessed or reviewed by the Contractor during performance of this Agreement, available to its employees, agents and /or subcontractors, only on a need-to-know basis. Further, the Contractor shall provide written instructions to all of its employees, agents and subcontractors, with access to the confidential information about the penalties for its unauthorized use or disclosure.

2. The Contractor shall store and process confidential information in an electronic format in such a way that unauthorized persons cannot retrieve the information by computer, remote terminal or other means.

3. The Contractor shall not remove documents, records, or information used or reviewed in connection with the Contractor's work for LADWP from LADWP facilities without prior approval from LADWP. The Contractor shall not use, other than in direct performance of work required pursuant to the Agreement, or make notes of any home address or home telephone numbers contained in personnel or customer files, confidential information, documents, or records provided by LADWP that are reviewed during work on this Agreement.

4. The Contractor shall not make or retain copies of any such documents, written and electronic materials, notes, documents, confidential information, records, or other information. Provided however, with prior written approval from LADWP, the Contractor may make copies of such documents, written materials, notes, documents, confidential information, or other information, as necessary to perform its duties under this Agreement.

5. The Contractor shall document and immediately report to LADWP any unauthorized use or disclosure of confidential information of which the Contractor becomes aware.

6.  The Contractor shall require that all its employees, agents, and subcontractors who shall, or may, review, be provided, or have access to LADWP data, information, personnel or customer files, confidential information, documents, or records during the performance of this Agreement, execute a confidentiality agreement that incorporates the provisions of this Confidentiality Agreement, prior to performing work under this Agreement.

C.  Return of All Documents to LADWP

The Contractor shall, at the conclusion of this Agreement or at the request of LADWP, promptly return any and all written materials, notes, documents, records, confidential information, or other information obtained by the Contractor during the course of work under this Agreement to LADWP, and all paper and electronic copies thereof. Provided however, the Contractor may retain duplicates and originals, as appropriate, of Contractor's administrative communications, records, files, and working papers relating to the services provided by the Contractor pursuant to this Agreement.

D.  Work Product and Deliverable Confidentiality

Any reports, findings, deliverables, analyses, studies, notes, information or data generated as a result of this Agreement are to be considered confidential. The Contractor shall not make such information available to any individual, agency, or organization except as provided for in this Agreement or as required by law. Notwithstanding the foregoing, the Contractor may reference its work under this Agreement in general terms in presentations and proposals, provided that in doing so, the Contractor does not disclose any non-public information. The Contractor may not release any information, whether or not such information is public information, to the media without prior written approval from LADWP.

E.  Subcontractors Subject to the Confidentiality Agreement

Any subcontract entered into pursuant to the terms of this Agreement shall be subject to, and shall incorporate, the provisions of this Confidentiality Agreement.

Bidder has caused their duly authorized representative to execute this Agreement as follows:

Date: _May 31, 2017_          Signature: _____

Firm: _Aventador Utility Solutions LLC_

Title: _President_

# Exhibit 2

FD-302a (Rev. 5-8-10)

194B-LA-3082417

Continuation of FD-302 of  (U) 12/10/2019_Gwen Williams                      , On  12/10/2019  , Page  5 of 10

**AVENTADOR**

Around May 2017, STEVERNER sent WILLIAMS an e-mail and asked for a contract
template. WILLIAMS did not understand why STEVERNER wanted a template because
anything to do with contracts needed to go through WILLIAMS. WILLIAMS told STEVERNER

194B-LA-3082417

Continuation of FD-302 of  (U) 12/10/2019_Gwen Williams _____ , On 12/10/2019 , Page 6 of 10

where she could find templates on the LADWP system. A week or two later, STEVERNER
said WRIGHT was going out of town and wanted to give PARADIS a $30 million sole
source contracted and wanted it on the Board agenda in ten days. WILLIAMS asked for
the scope of work and the purpose of the contract. STEVERNER said it was for the
customer care and billing ("CC&B") system. STEVERNER said WRIGHT wanted it done.
WILLIAMS pushed back and said, "No, PARADIS was a lawyer and a contract that large
sole source was not appropriate."

STEVERNER asked if the contract should go through WILLIAMS at which point WILLIAMS
said no she was not responsible for contracts in the initial stages and the contract
needed to go through staff.

Around May 31, 2017, WILLIAMS received a proposal for the contract. The fees for the
consultants were $400+ per hour. WILLIAMS thought this was outrageous. Sometimes a
contract would be that high for an attorney doing legal work, but these rates were
not in line for the scope of the work. WILLIAMS also did not understand the score of
work. Information technology ("IT") division was not involved and the contract was
coming from WRIGHT, STEVERNER, and someone from legal directly. It did not make
sense that a contract to work on an IT project (CC&B system) did not involve the IT
division. WILLIAMS understood PARADIS wrote the contract and included whatever he
wanted to include.

WILLIAMS refused to have anything to do with the contract. WILLIAMS told her staff
to take WILLIAMS's name out of the approval system. WILLIAMS did not want the
contract coming to WILLIAMS for approval. TANESHA SMITH was assigned the contract.
WILLIAMS told SMITH she could sign-off on the contract if she was directed to and
WILLIAMS would not fire SMITH because of it, but WILLIAMS did not support the
contract and wanted nothing to do with it.

WILLIAMS was so uncomfortable with the contract because she was already
uncomfortable with the smart meter request from before. WILLIAMS found out that
PARADIS was hired on a contingency fee basis for the PwC litigation. WILLIAMS did
not think the City would win and the litigation would be dragged out forever.
WILLIAMS did not understand why PARADIS was hired to begin with. It seemed WRIGHT
wanted to find a way to get PARADIS money. WILLIAMS did not have an opinion as to
why WRIGHT did this for PARADIS.

WILLIAMS did not think the City should have sued PwC because the City seemed to be
at fault for some of the issues with the new billing system. WRIGHT did not like
anyone telling him no. WILLIAMS did not see PARADIS and WRIGHT together and did not
know what type of relationship they had.

WILLIAMS called Board Commissioner BILL FUNDERBURKE. It was one of the only times

FD-302a (Rev. 5-8-10)

194B-LA-3082417

Continuation of FD-302 of  (U) 12/10/2019_Gwen Williams                              ,On  12/10/2019  ,Page  7 of 10

WILLIAMS ever contacted a Board Commissioner directly. WILLIAMS told FUNDERBURKE
that a contract was coming through and WILLIAMS thought FUNDERBURKE should not sign
off on the contract. FUNDERBURKE said it would not happen. WILLIAMS was careful not
to every reach out to Board members, but because WRIGHT was steamrolling the
contract through, WILLIAMS did not know what else to do.

FUNDERBURKE said he did not think the contract would happen, but ended up approving
the contract. WILLIAMS did not know who FUNDERBURKE spoke to before the vote, but it
had to be someone that convinced him to approve the contract. WILLIAMS did not know
FUNDERBURKE before he was appointed to the board. WILLIAMS became friendly with
FUNDERBURKE because of the civil rights anniversary. FUNDERBURKE's uncle was being
recognized.

At this time WILLIAMS decided to write a memo to document the situation because
WILLIAMS felt so strongly that the contract and situation was not okay. Typically a
small proposal was six to eight inches thick; the AVENTADOR proposal was not even
close to this standard. WILLIAMS was appalled by the rates and the fact that the
contract was sole source. WILLIAMS pulled the rates for ORACLE and other companies.
The AVENTADOR rates were dramatically higher than other companies. PARADIS had no
overhead because he was using LADWP's office. WILLIAMS checked the address on the
proposal and drove by the address to find it was a residential property.

WILLIAMS was shocked that a brand new company formed that same year was being pushed
through to receive a $30 million contract. Typically any contract for more than $5
million, WILLIAMS would go through and research whether the company had the capacity
to complete the work. NEIL GOGLIAN was the Chief Finance Officer for LADWP at the
time. No type of vetting happened for AVENTADOR. In addition, for any contract over
$25,000, the union had to sign off. DIEDRA FERNANDEZ worked for LADWP and was the
liaison with the union. The union could "sit on something" for over two years if
they wanted. WILLIAMS did not think the union ever signed off on the AVENTADOR
contract which was required for a notice of compliance. The contract went through
anyway. WRIGHT was not supposed to circumvent the union involvement, but WILLIAMS
felt WRIGHT must have done something.

WILLIAMS did not provide the memo to FUNDERBURKE or any Board members because this
would have really been stepping out of line. There was no process to object a
contract when something was inappropriate. CAMDEN COLLINS was the rate-payer
advocate. COLLINS mentioned the rates were high, but said this was specialty work so
it must be fine.

WILLIAMS reached out to FUNDERBURKE around May 26, 2017. WILLIAMS did not discuss
WRIGHT. WILLIAMS did not reach out to any other Board members. WILLIAMS did not
think there was a specific rule, but it was an unwritten rule not to speak to Board

FD-302a (Rev. 5-8-10)

194B-LA-3082417

Continuation of FD-302 of (U) 12/10/2019_Gwen Williams _____ , On 12/10/2019 , Page 8 of 10

members directly.

PARADIS's proposal had no qualifications listed for the employees. There was no specific work to be completed. Every person listed was billed at full time. WILLIAMS had never seen a contract with these rates and with everyone full time. WILLIAMS was appalled.

During the Board meeting, WILLIAMS sat in the front row. WRIGHT turned his chair to MEL LEVINE, Board President, and said, "I can give you the short version or the forty-five minute presentation." LEVINE directed WRIGHT to provide the short version. WILLIAMS felt from that moment that the whole thing was "set up." The Board voted unanimously for the contract. WILLIAMS was pissed, got up, and left the meeting. WILLIAMS never really spoke to FUNDERBURKE about the contract after the vote. FUNDERBURKE told WILLIAMS, "I know you are mad at me, but I tried to do something to make sure it was looked at by someone." WILLIAMS did not understand why WRIGHT "steamrolled" this contract through.

## Exhibit 3

**CITY OF LOS ANGELES**
**DEPARTMENT OF WATER AND POWER**
*INTRADEPARTMENTAL CORRESPONDENCE*

Date:     June 5, 2017

To:       David H. Wright, General Manager
          Donna I. Stevener, Chief Administrative Officer

From:     Gwendolyn W. Williams, Director of Supply Chain Services

Subject:  Proposed Contract with Aventador Utility Solutions, LLC for Project
          Management and Consulting Services related to the Jones Settlement and
          Customer Care and Remediation

---

In the public sector all contracts over the threshold of $25K should be evaluated to
determine that the cost is fair and reasonable. In general the purpose of the cost or
price analysis is to 1) to obtain the best quality and service at the least cost, 2) ensure
that a public agency is not paying unreasonably high prices to contractors, and 3)
maintain confidence in the public agency's ability to safeguard the public's investment.

Cost and price analyses are essential tools used when assessing fairness and
reasonableness of proposed prices submitted by LADWP offerors. Fairness in "price" is
usually accomplished by comparing the price submitted by one offeror to another,
comparing the submitted price to a previously evaluated price or comparison to what
others have paid for similar products or services. The use of historical rates to justify a
proposers' cost are not acceptable unless the original rates were previously subjected
to the reasonableness test. When no competition exists, as in the case of a single or
sole source, cost analysis that examines each cost element which makes up the price
(labor, overhead, profit) is often performed to determine cost reasonableness. The cost
analysis should consider the work the contractor proposes to do and the cost structure
in order to determine whether the proposed costs are an accurate projection of the
costs of that work.

The charts below list the highest rates for each four consultants and their sub-
consultants, who have negotiated contracts with LADWP during the past 3 years. It
should be noted that in three of the four cases, the rates are for individuals who would
typically represent 8 to 15 percent of the hours charged for the project. In the case of
Oracle, the highest rates listed amount to 50 percent of the estimated hours proposed
for the effort. However, the average Oracle hourly rate is less than $200 per hour.

David H. Wright
Donna I. Stevener
Page 2
June 5, 2017

| AECOM (est. 2017) Professional, Technical and Engineering Consulting Services | | Navigant Consulting (2015) Evaluation and Compliance of NERC Compliance Program | |
|---|---|---|---|
| Principal-in Charge | $300 | Managing Director | $393 |
| Advanced Technology Manager | $280 | Director | $317 |
| Supervisory Geotechnical Engineer | $305 | Associate Director | $278 |
| Project Director | $285 | Managing Consultant | $231 |
| Director, Environmental Assessment | $285 | Senior Consultant | $198 |
| Subconsultant | | Subconsultant | |
| Navigant Managing Director, | $428 | SVP, Compliance Services | $280 |
| Director | $344 | Senior Executive Engineer | $280 |
| Associate Director | $300 | | |

| Oracle (2015) Customer Care and Billing Remediation | | KPMG (2014) Consulting and QA Oversight Services for Financial and HR Management Systems Replacement | |
|---|---|---|---|
| Consulting Technical Director | $306 | Managing Director | $300 |
| Consulting Technical Mgr. | $264 | Project Manager | $285 |
| Consulting Senior Principal | $245 | Phase 1 and 2 Lead | $285 |
| Consulting Principal | $214 | Subject Matter Professional | $300 |
| Consulting Senior | $176 | Change Management Lead | $285 |
| Subconsultant | | Subconsultant | |
| CCB Architect | $175 | HR Lead | $175 |
| CCB Designer | $155 | Infrastructure Specialist | $175 |

The partial listing of rates in the following chart represent the rates for the effort proposed by Aventador Utility Solutions for years 1 and 2. These rates are significantly higher than the contracts listed above. The classifications with high rates proposed by Aventador Utility Solutions are not Managing Directors, like those listed in the aforementioned contracts, who would charge these rates on an as-needed or project management basis. Instead they are all nearly full time (from 1920 of 2080 annual hours) at rates that are significantly higher than the rates charged by the full time classifications in the contracts listed above.  The average hourly rate for this projected contract is approximately $400 per hour.

Without further analysis or audit, I am unable to determine that the type of work being performed is of such a nature to justify "the fairness" and "reasonableness" of these rates. The time allotted for review of this contract did not allow for any analysis of the cost elements that make up the rates or an independent audit of the rates.

David H. Wright
Donna I. Stevener
Page 3
June 5, 2017

| Aventador  Utility Solutions (2017) Project Management and Consulting Services for Jones Settlement and CCB Remediation | |
| --- | --- |
| Project Director | $475 |
| Settlement Remediation Plan | |
| Deputy Project Director | $425 |
| Principal Software Engineer Solution Architect | $425 |
| Sr. Software Engineer Solution Architect | $375 |
| | |
| Unbilled Accounts Review and Remediation | |
| Deputy Project Director | $425 |
| Principal Billing Solution Consultant | $375 |
| Senior Billing Solution Consultant | 4@ $325 |

Please contact me at (213) 367- 0440 with any questions you may have regarding this information.

GWW:vb

**Exhibit 4**

**To:** Wright, David[ Wright, David  <David.Wright@ladwp.com>]; Stevener, Donna[ Stevener, Donna  <Donna.Stevener@ladwp.com>]

**Cc:** Carr, Louis[ Carr, Louis  <Louis.Carr@ladwp.com>]; Townsend, Mark[ Townsend, Mark  <Mark.Townsend@ladwp.com>]; Chang, Flora[ Chang, Flora  <Flora.Chang@ladwp.com>]; Halberg, Terry[ Halberg, Terry  <Terry.Halberg@ladwp.com>]; Hiyoshi, Irene[ Hiyoshi, Irene  <Irene.Hiyoshi@ladwp.com>]

**From:** Botnick, Michael[Michael.Botnick@ladwp.com]

**Sent:** Thur 6/8/2017 6:47:31 PM (UTC)

**Subject:** RE: Questions and Observations Regarding Aventador Solutions Project Management

Picture (Device Independent Bitmap) 1.jpg

David,

Thank your response, and sharing your perspective with me.

Regards,

Michael

Sr Information Systems Supervisor Los Angeles DWP
(213) 367-4370  [cid:image001.png@01D22929.A1A41A10] michael.botnick@ladwp.com<mailto:michael.botnick@ladwp.com>
"Well done is better than well said." -- Benjamin Franklin

Attorney Client Privileged Communication - Attorney Work Product - For Settlement Purposes Only

_____

From: Wright, David
Sent: Wednesday, June 07, 2017 4:33 PM
To: Botnick, Michael; Stevener, Donna
Cc: Carr, Louis; Townsend, Mark; Chang, Flora; Halberg, Terry; Hiyoshi, Irene
Subject: RE: Questions and Observations Regarding Aventador Solutions Project Management

Michael,
This is in regards to your concerns regarding the Aventador contract.

It is our duty to our customers to fix the CC&B debacle and regain our customers' trust in the accuracy of their utility bills.  We have started down than path, but have several more years of effort until we can say that system, and the entire set of departmental operations around that system, are working effectively.  The efforts toward fixing CC&B over the last couple years related to the class action settlement process have primarily been on the overbilling of customers.

During the last several years, a number of CC&B projects had to be delayed due to the settlement activities.   The detailed list of delayed projects is over 100 projects, some small, others large, and all important.  These projects were grouped into ten separate summary items in the Agenda Report and almost all need to be completed in the next three years in order to comply with orders from the independent Court Appointed Monitor as part of the Class Action Lawsuit.  While LADWP has excellent staff supporting CC&B, due to retirements and inability to hire quickly, our resources are stretched very thin and won't be sufficiently replenished in the three years we have to meet the requirements of the settlement agreement.  This shortage of resources is especially true in the project management area where we are in the early stages of establishing a Program Management Office (PMO) which already has two very large projects - Smart Grid and ERP Replacement - on their plate and a very small staff in place to support these major projects.  To stay on track with the court orders and to make sure we bill correctly going forward, we need to implement the long list of CC&B projects and we need help from outside experts with both Oracle CC&B experience and specific knowledge of how LADWP has configured the billing system.

Aventador provides both of these skillsets.  While this company was formed only recently, the principals of the company have in fact been working with our IT team on the CC&B remediation for over two years and have the knowledge and project management skills needed to assist us in this important endeavor. They have a track record of success and timeliness in working with the Oracle team and in depth knowledge of LADWP's issues related to CC&B.  The use of experts should reduce risk surrounding these projects and provide an opportunity for employees to train under experienced experts.  It also provides learning time for our new PMO staff to develop their project management skills and work along the side of experts in this area.

We did not recommend this path without a lot of thought and consideration of the pros, cons, risks and rewards, and we think this is the best and only path to insure compliance with court timeframe and mandates, and gain back the trust of our customers.  Also, it provides LADWP with the least amount of risk related to the filing additional class action lawsuits against us from not fixing CC&B in a reasonable time frame.  We were not on a timeframe to fix the system before we brought in the outside contractor two years ago, and we can't meet the current timeframe without outside contractors.

The Board meeting this morning was recorded, so you can hear further discussion I had with the Board of Commissioners and maybe gain more understanding of our reasoning.
Sincerely,

David Wright
General Manager

_____

From: Botnick, Michael
Sent: Tuesday, June 06, 2017 3:53 PM
To: Wright, David; Stevener, Donna
Cc: Carr, Louis; Townsend, Mark; Chang, Flora; Halberg, Terry; Hiyoshi, Irene
Subject: Questions and Observations Regarding Aventador Solutions Project Management

All,

I am writing this email on my own behalf. That said, there are multiple fellow employees concerned about this topic.

As a DWP veteran I have been in charge of the Departments Bill Print sub-system utilizing both TRES ('old CIS') and CCB. I am sensitive regarding the scrutiny we DWP employees have been subjected to prior to our CCB project debacle. Post CCB has been untenable, but it seems, we are nearing a time when settlement with our ratepayer citizens is in reach.

As a citizen, a ratepayer, and a DWP veteran, I was concerned on several levels to find out about the Aventador Utility Solutions contract.
*	I'm concerned we are outsourcing the Project Management of CCB remediation.
*	I'm concerned the contract is being awarded to a company with no track record I could find. The only reference available to me for Aventador Utility Solutions, LLC shows the company existing for a three month period.
o	Is this the company we are awarding? If so, 3 months in business does not lend itself much time to develop a track record.

Overall I am concerned with three things:
*	Increasing rather than reducing the scrutiny the DWP is subjected to
*	Not responsibly utilizing the public's funds
*	Not furthering the careers of active employees

Respectfully,

Michael Botnick

P.S. Yes, I do realize, I am not privy to all the influences being exerted here. Please realize I am truly concerned about this Department, I am not attempting to 'grandstand' or be flippant.  I realize I am in no position to demand any response, I would however appreciate a response.


Sr Information Systems Supervisor Los Angeles DWP
(213) 367-4370  << OLE Object: Picture (Device Independent Bitmap) >> [cid:image001.png@01D22929.A1A41A10]
michael.botnick@ladwp.com<mailto:michael.botnick@ladwp.com>
"Well done is better than well said." -- Benjamin Franklin

Attorney Client Privileged Communication - Attorney Work Product - For Settlement Purposes Only

## <u>Exhibit 5</u>

## [A/V Clip Lodged Manually]

# Exhibit 6

ORIGINAL

*cc*

FILED
Superior Court of California
County of Los Angeles

MAY 0 5 2017

Sherri R. Carter, Executive Officer/Clerk

By: _____, Deputy
Rita Nazaryan

1  Michael J. Libman (SBN 222353)
**LAW OFFICES OF MICHAEL J. LIBMAN**
2  16133 Ventura Blvd., Suite 1200
Encino, California 91436
3  Telephone: (818) 995-7300

4  *Liaison Counsel*

5
Jack Landskroner (Admitted Pro Hac Vice)
6  **LANDSKRONER GRIECO MERRIMAN, LLC**
1360 West 9th Street, Suite 200
7  Cleveland, Ohio 44113
Telephone: (216) 522-9000
8

9  *Class Counsel*

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA
11                COUNTY OF LOS ANGELES, CENTRAL DISTRICT

**By Fax**

12  ANTWON JONES, on behalf of himself, and      Case No. BC577267
all other similarly situated,
13                                                [Related to Case Nos. BC565618 (Lead),
                                                  BC568722, BC571664, and BC574690]
14          Plaintiff,                            [CLASS ACTION]

15      vs.                                       **DECLARATION OF THE**
                                                  **INDEPENDENT CC&B SYSTEM**
16  CITY OF LOS ANGELES, by and through the       **MONITOR IN SUPPORT OF**
Los Angeles Department of Water and Power         **PLAINTIFF'S MOTION FOR FINAL**
17  and DOES 1 through 50, inclusive,             **APPROVAL**
                                                  Hearing Date: July 7, 2017
18          Defendants.                           Time: 9:00 am
                                                  Department: Dept. 323
19                                                Judge: Hon. Elihu M. Berle

20
21
22
23
24
25
26
27
28

                                1

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL**

BENDER_0076

# TABLE OF CONTENTS

I.    SUMMARY OF REMEDIATION WORK PERFORMED
      DURING FIRST AND SECOND QUARTER OF 2016 . . . . . . . . . . . . . . . . . . . . . . 4

II.   SUMMARY OF REMEDIATION WORK
      PERFORMED DURING THIRD QUARTER OF 2016 . . . . . . . . . . . . . . . . . . . . . . 10

III.  SUMMARY OF REMEDIATION WORK
      PERFORMED DURING THE FOURTH QUARTER
      OF 2016 AND THE FIRST QUARTER OF 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   ANTICIPATED FUTURE WORK ITEMS and
      RISKS TO THE IMPLEMENTATION OF THE SETTLEMENT . . . . . . . . . . . . 15

2

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1        I, PAUL L. BENDER, declare the following under the penalty of perjury:

2        1.     I am over the age of 18 and have personal knowledge of the facts set forth herein, which are known to me to be true and correct.  I could and would testify competently about the matters set forth herein if called upon to do so.

2.     On December 21, 2015, I was appointed as the Independent CC&B System Monitoring Expert ("Independent Monitor") in this litigation.

3.     On or about July 14, 2016, I provided the Court with my *Report Concerning Status of Class Action Settlement for the First and Second Quarters of 2016,* which is set forth in **Section I** below.

4.     On or about November 10, 2016 I provided the Court with the *Supplemental Declaration of the Independent CC&B System Monitor In Further Support of Plaintiff's Motion for Preliminary Approval* of the Settlement reflected in the Revised Class Action Settlement Agreement and Limited Release dated November 9, 2016 (the "Settlement" and "Revised Settlement Agreement," respectively), which is set forth in **Section II** below.

5.     I now respectfully submit this Declaration in *Support of Plaintiff's Motion for Final Approval* of the Settlement as reflected in the Revised Settlement Agreement.  For the Court's convenience, detailed in **Section III** below are the activities that my team has undertaken during the fourth quarter of 2016 and first quarter of 2017.

6.     Finally, detailed in **Section IV** below is my assessment of the anticipated future work items required to be performed to comply with the terms of the Settlement and certain risks that could impact upon LADWP's ability to timely complete these work items.

\\
\\
\\
\\
\\
\\

3

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

BENDER_0078

**I.    SUMMARY OF REMEDIATION WORK PERFORMED
DURING FIRST AND SECOND QUARTER OF 2016**

**Summary of CC&B System Remediation Work
Performed During December 21, 2015 - April 8, 2016 Period**

7.      As detailed in my Declarations of April 8, 2016 and November 10, 2016, during the first and second quarters of 2016, I, along with my colleagues, Mr. Osman Ahmad and Mr. Siva Thoppe, each personally conducted on-site visits at LADWP on January 5-6th, January 14th, February 8th, February 21st, March 8th, March 16-18th and March 22-23rd, 2016.  In addition to the aforementioned site visits, during the December 21, 2015 - April 8, 2016 period, my colleagues and I also conducted weekly Friday morning conference calls with LADWP personnel for the purpose of monitoring and discussing the status of various work items being undertaken to implement the terms of the Settlement.

8.      During the December 21, 2015 - April 8, 2016 period, these numerous site visits and weekly conference calls enabled my colleagues and me to:

      a.      obtain and undertake to evaluate the internal protocols, SQL Queries and specific methodologies LADWP used to identify all Class and Subclass members and to calculate damages owed to all such Class and Subclass members;

      b.      review and initiate validation of the LADWP's:

          (i)      proposed SQL scripts to verify and ensure the correctness of Class and Subclass identification code;

          (ii)      methodology used to determine the amount of refund/credit for each Class and Subclass member to ensure that the methodology is correct for purposes of making Class members 100% whole; and

          (iii)      testing methodology and test scripts and to sample and verify test results for accuracy.

9.      During the December 21, 2015 - April 8, 2016 period, my colleagues and I were also engaged in monitoring and verifying the: (i) operational activities supporting the achievement of the Customer Service Performance Metrics required by the Settlement; and (ii) methodologies

4

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1 | employed to calculate the Customer Service Performance Metrics specified in the Revised
2 | Settlement Agreement are reasonable and accurate.

3 |      10.     As explained in my Declaration of April 8, 2016, LADWP has provided my team
4 | and me with unfettered access to necessary data, information and personnel.   Class Counsel and
5 | Counsel for LADWP have also worked cooperatively with my team to facilitate our efforts.

6 |      11.     In early April 2016, I determined that it was necessary for my team to add
7 | additional human resources and to request that the Court provide additional time to perform the
8 | work required of the Independent Monitor under the Settlement.

9 |      12.     On or about April 4, 2016, I met and conferred with counsel for the Parties to
10 | inform them that my team would be providing additional human resources to work on this
11 | Independent Monitoring assignment and asked the Parties to request that the Court continue the
12 | hearing on Plaintiff's Motion for Preliminary Approval until July 29, 2016.

13 |      13.     Subsequent to that meeting, Class Counsel informed me that the Court had
14 | continued the hearing on Plaintiff's Motion for Preliminary Approval to July 29, 2016.

### A. Summary of Review and Validation Activities Performed by Independent Monitor On CC&B System Remediation Project During April 12th – April 29th LADWP Site Visit

14.     During the numerous one and two day-site visits, document review and analysis sessions, and weekly conference calls my team conducted with LADWP's personnel, Class Counsel and LADWP's Counsel throughout the December 21, 2015 - April 8, 2016 period, my colleagues and I surfaced a wide range of issues we had identified with the remediation team participants.

15.     While all remediation team participants were cooperative and provided the information requested by my team, by early April 2016, I formed the opinion that the sheer volume of information that my team needed to review and carefully analyze in order to properly discharge my duties as the Court-appointed Independent Monitor necessitated an extended site

5

DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL

BENDER_0080

1   visit to LADWP by my team for a period of at least two weeks.  Accordingly, an extended site

2   visit was scheduled for April 12ᵗʰ – April 29ᵗʰ, 2016.

3       16.    During the extended site visit, my team was primarily engaged in two specific

4   types of activities.  The first activity involved continuing to work with the remediation team and

5   the second activity involved performing a detailed review of the systems, methodology and

6   practices used to bill LADWP's largest customers.

7       17.    The ongoing work with the remediation team involved meeting with LADWP IT

8   professionals, Class Counsel and LADWP's Counsel.  During these meetings, the mechanisms

9   LADWP used for identifying accounts that had been overcharged were discussed and my team

10  devoted significant amounts of time to confirm that the mechanisms LADWP used were accurate

11  and reliable.

12      18.    During the course of our discussions, my team made several suggestions

13  concerning the ways in which the mechanisms LADWP used for identifying accounts that had

14  been overcharged could be further enhanced to improve the accuracy of these mechanisms.

15  LADWP's IT professionals implemented the suggestions my team made and performed

16  additional analyses, which included fine tuning and performing additional runs of the Structured

17  Query Language ("SQL") queries that had been used to identify Class members.  On doing so,

18  the LADWP identified a small number of additional customers who had been overcharged (but

19  who had not previously been identified by LADWP) and they confirmed that the additional

20  amount of refunds to be provided to Class members as of that point in time would increase by at

21  least $5.4 million dollars.

22      19.    Based on these results, my team continued to work closely with LADWP IT

23  professionals to verify the accuracy of the hundreds of additional SQL queries that were

24  programmed and run to identify other LADWP customers who were overcharged.

25      20.    My team's second area of focus during the extended on-site visit to LADWP in

26  April 2016 involved performing a detailed review of the billing methodology and practices used

27  to bill LADWP's largest customers.  While these very large customers are also billed by the

28

6

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

BENDER_0081

1    LADWP's CC&B System, the billing process is initiated by the LADWP's MV-PBS System,

2    rather than the CC&B System itself.   Specifically, the MV-PBS System calculates and generates

3    an invoice for the service(s) the customer uses and the CC&B System generates a bill, tracking

4    the invoice, to issue to the customer.  As a result, in order to attest to the accuracy of the CC&B

5    bills for these very large customers, it was necessary for my team to perform additional reviews

6    of the MV-PBS System.

7         21.     This additional work included, but was not limited to, my team performing the

8    following tasks:

9         • Determining if all MV-PBS customer accounts were billed by CC&B

10        • Determining if each MV-PBS customer account was on the correct rate

        • Determining if the MV-PBS invoices were accurately calculated

11

12        22.     At the conclusion of my team's extended site visit to LADWP during the April

13   12th through April 29th, 2016, time period, I formed the opinion that the Scope of Work and then-

14   current schedule would need to be significantly revised in order to permit LADWP to undertake

15   the necessary remediation, testing, and implementation work, and for my team to perform the

16   various verification tasks and data analyses required to ensure that LADWP's mechanisms and

17   methodologies are working as intended.

18        23.     At this time, I also formed the opinion that the risk that LADWP's largest

19   customers might be incorrectly billed because LADWP is using two billing systems to generate

20   and process bills for these large customers could be substantially mitigated  because 1) the

21   LADWP's CC&B System, if correctly programmed, has the ability to bill most, if not all, of

22   these large accounts without LADWP having to utilize the MV-PBS System, and 2) LADWP

23   can implement certain internal control processes and organizational restructurings to

24   significantly strengthen the reliability, accuracy and completeness of the account billings now

25   initiated in the MV-PBS system.

26

27

28
---
7

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

BENDER_0082

**B.  Revised Scope of Work and Schedule**
**Proposed by Independent Monitor Following**
**April 2016 Extended Site Visit to LADWP**

24.     Following the April 2016 extended site visit to LADWP, I met and conferred with Class Counsel and Counsel for LADWP and informed them of these and other opinions that my team had formed during the April 2016 extended site visit.  During these discussions, I also informed Class Counsel and Counsel for LADWP of my opinion that the risk of incorrect billing to large customers could be mitigated by eliminating the MV-PBS System from the large customer billing process, and by implementing certain new internal control processes and organizational restructurings.  Given the additional work and rigorous testing that will be required in conjunction with this migration, I informed the Court, Class Counsel and Counsel for LADWP that it is my opinion that the migration from the MV-PBS System to the CC&B System cannot be accomplished until at least mid-2017.

25.     Following the April 2016 extended site visit, I also informed Counsel for the Parties of my opinion that the Scope of Work and then-current schedule would need to be significantly revised for LADWP to undertake the additional required remediation, testing, and implementation activities, and for my team to: (i) perform the various verification tasks and data analyses required to ensure that the mechanisms and methodologies LADWP is utilizing are accurate and reliable; and (ii) work closely with LADWP IT Professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to LADWP customers is achieved.

26.     After the April extended site visit to LADWP, my team and I continued to work closely with Class Counsel, LADWP personnel and counsel for the LADWP and conducted site visits to LADWP on April 26 thru May 7; May 16-19; June 7-10; June 13-15; and July 6-8 and also continued to conduct weekly conference calls.  During these site visits and conference calls, my team and I:

- Provided inputs to identify several items where customers were overbilled
- Provided guidance to prioritize analysis items, helping to allocate limited resources more effectively

8

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

BENDER_0083

- Reviewed interim analysis results, and providing feedback where appropriate
- Reviewed project plan
- Provided feedback on several items not captured in the project plan
- Reviewed solar billing issues in detail

27.     Based on the work that my team and I performed through the end of the Second Quarter 2016, it was my opinion that LADWP required significantly more time to undertake the remediation, testing, and implementation activities required to ensure compliance with the monetary relief provisions of the Settlement. Consequently, the duration of the independent monitoring project also needed to be extended so that the independent monitoring activities could be performed through the end of the Remediation Period as required by the Settlement.

28.     The initial Scope of Work for the Independent Monitoring project contemplated an 18-month independent monitoring project duration and approximately 2,000 hours of work by my team, through the then-projected end of the Remediation Period.  At the conclusion of the extended site visit in April 2016, I informed Counsel for the Parties that the Scope of Work for the Independent Monitoring team would need to be revised to allow for a 42 month independent monitoring project duration and approximately 6,500 hours of work by my team, so that we could continue to work through the end of the Remediation Period, to: (i) perform the various verification tasks and data analyses required to ensure that the mechanisms and methodologies being utilized by the LADWP are accurate and reliable; and (ii) work closely with LADWP IT professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to LADWP customers is achieved.

29.     After a series of extended discussions that occurred over the next several weeks in May and June 2016, Class Counsel negotiated an agreement with counsel for LADWP that, subject to Court and LADWP Board approval, resulted in the LADWP consenting to revise the Scope of Work to allow for a 42-month independent monitoring project duration and approximately 6,500 hours of work by my team.

9

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

## II.   SUMMARY OF REMEDIATION WORK
## PERFORMED DURING THIRD QUARTER OF 2016

### A. Summary of CC&B System Remediation Work
### Performed During the July 1, 2016 - November 9, 2016 Period

30.    During the third quarter of 2016, my colleagues and I personally conducted on-site visits at LADWP on July 5-7th, August 3-5th, August 24-26th, September 13-15th, September 22nd and September 27-29th, 2016.  Class Counsel attended and participated in these site visits as part of the confirmatory discovery process.  In addition to the aforementioned site visits, during the third quarter of 2016 we also conducted weekly Friday morning conference calls with Class Counsel, LADWP personnel and LADWP's counsel for the purpose of monitoring and discussing the status of various work items being undertaken to implement the terms of the Revised Settlement Agreement.

31.    During the period July 1 through late October, 2016, my team and I worked closely with Class Counsel, LADWP officials and counsel for the City and LADWP to review and verify the accuracy of the Class member identification methodology utilized to identify Class and Subclass members by reviewing and testing the accuracy of the SQL Queries executed by the LADWP against the LADWP's CC&B database to identify customers who satisfy the criteria for inclusion in one or more of the defined subclasses.

32.    In addition to the foregoing activities, during this period, my team and I fulfilled the responsibilities as the Independent Monitor in this litigation by:

   a.    obtaining and evaluating the internal protocols, SQL Queries and specific methodologies used by LADWP to identify all Class and Subclass members and to calculate damages owed to all such Class and Subclass members;

   b.    reviewing and validating that the methodology used by the LADWP to determine the amount of refund/credit for Class and Subclass members is correct for purposes of making Class members 100% whole and is therefore fair and reasonable to such Class members;

   c.    reviewing and validating the LADWP's testing methodology, test scripts and sampling and verifying test results for accuracy;

10

BENDER_0085

d.      reviewing the conclusions reached by LADWP on issues related directly to the settlement; and

e.      monitoring and verifying that changes to Rule 17 of the LADWP Rules Governing Water and Electric Service are properly implemented.

33.     By early July 2016, the LADWP had already acknowledged that there was an additional $5.4 million in credits or refunds due to Class Members beyond the initial estimate of $44 million in refunds and credits identified to the Court at the December 21, 2015 hearing.

34.     Because I reasonably believed that additional refunds and credits – as well as Class Members – were likely to be identified if the Parties were permitted additional time to work closely with my team, I respectfully requested that the Parties ask the Court to permit the Parties until November 18, 2016 to complete all of the programming and testing necessary to confirm the accuracy of the mechanisms utilized by the LADWP to: (i) identify customers who have been overcharged; and (ii) quantify the amounts of such over charges.

35.     In mid-July 2016, the Parties jointly requested that the Court continue the hearing on Plaintiff's Motion for Preliminary Approval until November 18, 2016.  The Court subsequently granted the Parties' request.  Thereafter, the LADWP Board approved a Board resolution revising the initial Scope of Work to allow for a 42-month independent monitoring project duration and approximately 6,500 hours of work by my team.

36.     Because the Court permitted the Parties until November 2016 to complete all of the programming and testing necessary to confirm the accuracy of the mechanisms utilized by the LADWP to: (i) identify customers who have been overcharged; and (ii) quantify the amounts of such over charges -- and because the parties have worked in a highly cooperative and diligent manner under the watchful eye of my independent monitoring team, the LADWP has now identified additional credits and refunds totaling approximately $22.8 million dollars beyond the initial estimate of $44.7 million in refunds and credits identified to the Court at the December 21, 2015 hearing.

---

11

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

BENDER_0086

37.    As a result, if the Settlement reflected in the Revised Settlement Agreement is finally approved, a minimum of $67.5 million dollars in refunds and credits will be paid to Class Members and the total amount of refunds and credits to be paid to Class members is also expected to increase once ongoing fieldwork investigations are completed.   In addition, the Revised Settlement Agreement also requires that the LADWP expend an additional $20 million over the "eighteen-month CC&B System Remediation Period . . . to retain CC&B System consultants and software engineering consultants  . . . to assist the LADWP in remediating and stabilizing the LADWP's CC&B System to ensure that the CC&B System generates and delivers timely and accurate customer bills."

38.    Throughout the July through November 2016 time period, Class Counsel spent considerable time assisting Class members in the identification of customer billing issues.  As we progressed through the monitoring process, Class Counsel requested that my team direct additional attention to the Tiger Team.  After my team and I spent time speaking with Class Counsel and LADWP officials, it was determined that the interests of the Class would be best served if my team and I would devote additional resources to the implementation and oversight of the Tiger Team's processes and operations.  Accordingly, I added an additional team member who has been charged with aiding Class Counsel and LADWP personnel in creating, implementing and operating the LADWP Tiger Team on a daily basis.  Based on our work, I have confirmed that the LADWP has satisfied the Settlement requirement that the Tiger Team be "fully staffed within 60 days of the Settlement being preliminarily approved by the Court" on December 30, 2016.

\\
\\
\\
\\
\\
\\
\\

12

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

**III.   SUMMARY OF REMEDIATION WORK
PERFORMED DURING THE FOURTH QUARTER
of 2016 AND THE FIRST QUARTER OF 2017**

    **A.  Summary of CC&B System Remediation
Work Performed During the Fourth Quarter
of 2016 and First Quarter of 2017**

    39.   As part of my duties and responsibilities as the Independent Monitor, I personally conducted on-site visits at LADWP on October 17-21st, October 23-28th, November 6-8th, November 15-18th and December 13-16th, 2016 and on January 9-13th, January 17-20th, January 25-27th, February 1-3rd, February 8-10th, February 14-17th, February 21-24th, February 27th, March1-3rd, March 7-10th, March 13-17th, March 20-24th and March 27-31st, 2017. Class Counsel attended and participated in these site visits as part of the confirmatory discovery process. In addition to the aforementioned site visits, during the fourth quarter of 2016 and first quarter of 2017, we also conducted weekly Friday morning conference calls with Class Counsel, LADWP personnel and counsel for LADWP for the purpose of monitoring and discussing the status of various work items being undertaken to implement the terms of the Revised Settlement Agreement.

    40.   After the Court had preliminarily approved the proposed Settlement on December 30, 2016 and as the deadline for the issuance Class Notice drew near, Class Counsel requested that my team and I expand the scope of our work involving monitoring of the claims administration process in order to assure the intent of the Settlement is fully achieved. After discussion with Class Counsel, LADWP officials and LADWP's counsel, the LADWP agreed to allow my team to expand our monitoring role accordingly.

    41.   In addition, during the fourth quarter of 2016 and first quarter of 2017, Class Counsel requested that we devote additional time working with LADWP officials to monitor and assess the manner in which:

        a.   the Claims Administrator was developing, programming and testing the claim portal that would be used to transmit claims and supporting documentation to the LADWP for further processing;

---

13

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

BENDER_0088

b. the Claims Administrator developed and implemented the Claims Process itself. This included analyzing and providing recommendations concerning plan inputs, key activities, the schedule and accountable resources;

c. the Claims Administrator designed and programmed the website dedicated to the claims resolution process in this litigation;

d. the LADWP Tiger Team was created and staffed and the manner in which the Tiger Team is receiving, processing and resolving claims;

e. the Claims Administrator Class Notice and Claims Letter handling procedures were developed, implemented and tested;

f. the LADWP claims processing and resolution procedures were developed, implemented, tested and audited;

g. the LADWP organized and staffed the Claims Processing Team;

h. the LADWP is processing claims, including, but not limited to, solar claims; and

i. the Claims Administrator and LADWP developed and implemented communications protocols between themselves and with Class members and claimants.

42. Following extensive discussions, my team and I worked closely with Class Counsel, LADWP officials, LADWP's counsel and the Claims Administrator to assess and monitor the manner in which the LADWP and Claims Administrator were working to address numerous issues related to the Settlement, including, but not limited to, those issues set forth in the foregoing paragraph.

43. In addition to the foregoing, I and several members of my team, along with Class Counsel, LADWP officials, counsel for LADWP and employees of the Claims Administrator traveled to the Claims Administrator's Call Center located in Louisville, Kentucky where we conducted a two day site inspection. Following the site visit, and after consultation with Class Counsel, LADWP officials and counsel for LADWP my team made the decision to deploy one

14

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

1   of my team members at the Claims Administrator's Call Center on an ongoing basis to ensure

2   that call handling procedures are being adhered to and that claimants' calls are timely and

3   properly handled and that any Call Center related issues that develop are promptly escalated for

4   appropriate resolution.

5       44.    My team and I are continuing to take a very active role in the Claims

6   Administration process to ensure that this work is – and will continue to be – performed in

7   accordance with the requirements of the Revised Settlement Agreement and I anticipate that my

8   next quarterly report to the Court will provide detailed information concerning the status of the

9   claims process.

11  **IV.    ANTICIPATED FUTURE WORK ITEMS and RISKS**

12  **        TO THE IMPLEMENTATION OF THE SETTLEMENT**

13      45.    Although I will continue to provide quarterly reports to the Court in my role as

14  Independent Monitor, at this juncture in the litigation, I believe it is appropriate to provide the

15  Court with my assessment of: (i) the anticipated future work items required to be performed by

16  the LADWP to comply with the terms of the Settlement; and (ii) certain risks that could impact

17  upon LADWP's ability to timely complete these work items.

18      46.    First, there remain numerous work items that must be timely and accurately

19  completed by the LADWP over the course of the next 18-36 month period in order for the

20  LADWP to satisfy numerous requirements of the Settlement.

21      47.    Although the current General Manager has, in my professional opinion,

22  performed (and continues to perform) in a highly commendable manner, this General Manager

23  inherited an organization that had been managed in an extremely poorly manner over a period of

24  several years before the current General Manager assumed day-to-day responsibility over

25  LADWP.   As a result, the current General Manager faces numerous challenges.   First, the

26  LADWP is grossly understaffed in the Information Technology area.   Compounding this

27  challenge is the difficulty that LADWP faces in hiring additional IT personnel based on the

28  current salary structure applicable to the IT Department, which is well below market.

15

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

BENDER_0090

1    Additionally, the LADWP lacks well-qualified IT project management personnel and the

2    Department therefore lacks the capability required to successfully manage very large scale IT

3    implementation projects. Because the Department lack these internal resources, it must procure

4    such services on a contracted basis and, in the past, has often failed to do so.

5         48.      Another very serious challenge facing the current General Manager is the sheer

6    number of IT related work items that must be completed for the LADWP to comply with the

7    terms of the Settlement and to allow the LADWP to generate customer bills that are both timely

8    and accurate. The following is a non-exhaustive list of such work items and is meant only to

9    illustrate for the Court the number of highly complex tasks that the LADWP must successfully

10   complete in the next 18-26 months:

11            a.   timely completion of Settlement mandated CC&B remediation work plan;

12            b.   achieve compliance with Settlement mandated operating and billing metrics;

13

14            c.   achieve compliance with Mayor's "Customer Bill of Rights";

15            d.   complete migrations of all accounts from MV-PBS System/Rates Group to CC&B Billing System/Billing Unit;

16

17            e.   timely and accurate programming of CC&B Billing System to reflect Quarterly Rate Factor Adjustments;

18

19            f.   complete programming of CC&B Billing System to provide changes required for LADWP Water Bonding/Securitization Project;

20            g.   complete programming of CC&B Billing System to provide for monthly customer billing;

21

22            h.   complete CC&B disaster recovery site testing;

23            i.   complete CC&B System version upgrade; and

24            j.   complete programming for AMI/Smart Grid "Meter Data Management"

25               ("MDM") System.

26         49.      Further compounding the already formidable challenges facing the LADWP and

27    current General Manager is the loss of very senior management personnel in the IT Department

28

16

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

1   and Customer Billing Unit due to numerous recent retirements. The loss of numerous senior

2   managers, combined with an inability to rapidly replace these managers has resulted in a drastic

3   loss of institutional knowledge that has only intensified the challenges the LADWP is facing.

4        50.   Based on my more than 30 years of experience in the utility industry, the recent

5   coalescence of these factors has greatly intensified the difficulties that the LADWP and the

6   current General Manager face in achieving they requirement of the Settlement.

7        51.   In the course of the coming quarters, my team and I will continue to closely

8   monitor the LADWP's progress toward meeting these requirements and will report our findings

9   to the Court on a quarterly basis.

10

11        I declare under penalty of perjury under the laws of the United States and the State of

12   California that the foregoing is true and correct.

13

14   Executed this 5th day of May 2017, at Los Angeles, California.

15

16

17

18                           Paul L. Bender

19

20

21

22

23

24

25

26

27

28

---

17

**DECLARATION OF THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

BENDER_0092

1

**ELECTRONIC PROOF OF SERVICE**

2

3 **STATE OF OHIO, COUNTY OF CUYAHOGA**

4        I am a paralegal with Landskroner Grieco Merriman, LLC in the County of Cuyahoga, State of
Ohio. I am over the age of 18 and not a party to the within action. My business address is 1360 West
5 9th Street, Suite 200, Cleveland, OH 44113.

6        On May 5, 2017, I served the foregoing document(s) described as **DECLARATION OF**
**THE INDEPENDENT CC&B SYSTEM MONITOR IN SUPPORT OF PLAINTIFF'S**
7 **MOTION FOR FINAL APPROVAL** on the interested parties in this action as follows:

8        **BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS**: In accordance with the
9 Court's Order Authorizing Electronic Service governing Case No. BC BC577267 and related matters
requiring all documents to be served upon interested parties via the File & ServeXpress Service
10 system.
        I declare under penalty of perjury under the laws of the State of California that the above is
11 true and correct.

12        Executed on May 5, 2017 at Cleveland, Ohio.

13

14

15

16        Deborah Kessel

17

18

19

20

21

22

23

24

25

26

27

28

BENDER_0093

**<u>Exhibit 7</u>**

194B-LA-3082417

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of ___(U) Interview of PAUL BENDER (April 20, 2021)___ , On __04/20/2021__ , Page __13 of 14__

**June 6, 2017 DWP Board Meeting** [05:20:00]

[05:25:00 to 05:44:00] [Agent's Note: AUSA Mills showed BENDER a video clip from LADWP's Board of Commissioner's Meeting dated June 6, 2017.  The clip was retrieved from section 22 (01:49:05) from the following website: https://ladwp.granicus.com/MediaPlayer.php?view_id=2&clip_id=972 ]

**Bender's Reaction to June 6, 2017 DWP Board Meeting** [05:45:20]

BENDER stated that there were "quite a few false statements" in the video from the Board Meeting and that BENDER has "never seen anything like this in

FD-302a (Rev. 5-8-10)

194B-LA-3082417

(U) Interview of PAUL BENDER (April 20,
Continuation of FD-302 of 2021) ,On 04/20/2021 ,Page 14 of 14

my life." BENDER said, "there was no need for this contract to do what he [WRIGHT] said." WRIGHT's presentation was "just not true – the system was working perfectly fine." It was "incomprehensible" that WRIGHT would "go to a no-bid $30 million contract." It was a "lie" when WRIGHT referenced that LADWP would not meet the three year remediation process. BENDER had never seen that LADWP had "negotiated a three year time-frame."

The statement about LADWP being "grossly understaffed" from the "5/5/17 Signed Declaration" was not "carte blanche to just go hire $30 million worth of people." BENDER did not know why no one asked him (BENDER) about this. The statement in the video from the Board Meeting that "if we don't do this the disaster will be even greater" was "just not true" according to BENDER.

In reference to the ratepayer lawsuit, BENDER stated "this was a settlement… to make some attorneys rich" and customers benefited to a very small degree.

In regards to the no-bid contract, BENDER stated "this Board is negligent." BENDER was "very upset" that his declaration was used for the contract. WRIGHT never asked any questions to BENDER about the contract. MEL LEVINE and BILL FUNDERBURK never contacted BENDER to ask any questions; BENDER never heard of FUNDERBURK before. WRIGHT "intentionally did not ask" BENDER about issues surrounding the contract. If BENDER had known about the issues surrounding the contract back in 2017, BENDER "would have exposed it – period." BENDER does not "associate with this kind of process."

To justify a $30 million no-bid contract should require a "big emergency." Here, BENDER stated, "there was no emergency – period. There was no need for this contract." Additionally, BENDER said that "any services that are provided under here could easily have been provided by Oracle."

BENDER's last contact with PARADIS was in April or May of 2019.

**Exhibit 8**



# Exhibit 9



# **Exhibit 10**

## **[A/V Clip Lodged Manually]**

## **Exhibit 11**

## **[A/V Clip Lodged Manually]**